F. G. HENTIG v. H. PIPHER *et al.*

**No. 10876.**

1. PROOF OF TITLE—*possession of land under claim of ownership, sufficient against one without right.* A person who holds possession of real estate under a claim of ownership is entitled to recover the same as against one who has no right or title to the same.

2. LANDLORD AND TENANT—*purchaser of leasehold at judicial sale cannot dispute landlord's title.* Where a leasehold interest in land is sold at judicial sale, the purchaser acquires no greater right than the tenant held, and, like the tenant, he will not be permitted to dispute the title of the landlord under whom he holds.

3. TAX DEED—*issued, without his knowledge, to certificate-holder, who accepts redemption money thereafter,— quit-claim deed from him to one with notice passes no title against*

*owner.* K. purchased land at a tax sale, and a deed thereto was issued to him without his knowledge. A few months afterward, he accepted the full amount of his claim for taxes from the owner, and a written release or writing of redemption was given by him. About sixteen years afterward, he was informed by H. that a tax deed had been made to him, and upon the request of H., and believing that it would be an act of justice to the real owner, he made a quitclaim deed to H., telling him at the same time that he had no interest in the land, *Held*, that K. had no title or interest to convey, and that H. acquired none through the quitclaim deed.

Error from the Court of Appeals, Northern Department. Opinion filed December 11, 1897. *Affirmed.*

*F. G. Hentig, pro se.*

*Isenhart & Alexander,* for defendants in error.

JOHNSTON, J. This was an action brought by the heirs of William Ments, deceased, to recover from F. G. Hentig and W. W. Manspeaker two lots in the city of Topeka. The plaintiffs prevailed in the District Court, when Hentig instituted a proceeding in error in the Court of Appeals, Manspeaker declining to take further part in the controversy. There, the judgment of the trial court was affirmed (5 Kan. App. 879), and Hentig brings it here for further consideration. Most of the questions raised have been satisfactorily determined by the Court of Appeals, and hence we will only notice those which seem to require further attention.

It is earnestly contended that the plaintiffs below failed to show title in themselves, and that there was such a break in the chain of title as necessarily defeated a recovery. It appears that the lots were first conveyed to Ments, in 1857, by J. F. Cummings. In the latter part of the same year, Ments conveyed the lots to others, who, in 1860, reconveyed them to Ments. In tracing the title

1. Possession under claim of title, sufficient, when.

to Ments, a patent from the United States to Isaiah Walker was introduced, a deed from Walker to Cyrus K. Holliday, trustee of the Topeka Association, a bond for a deed from Holliday to E. C. K. Garvey, agreeing to convey share number fifty-seven in the Association, and a deed from Garvey to Cummings, the grantor of Ments. There is no testimony to show that the lots in question were drawn upon share number fifty-seven, and in this respect the proof was incomplete. Notwithstanding this lack of proof the plaintiffs below showed title sufficient to support their action of ejectment. Ments held the property, under a claim of title, from 1860 until his death, in 1869, and his heirs have held since that time under a like claim of ownership. They leased it to C. A. Sperry, in 1879, for a term of ten years, and under that lease possession was taken and substantial improvements were made. As Sperry was holding under the plaintiffs below, his possession was theirs, and as they held possession under claim of ownership and color of title, they were entitled to recover the lots as against one who had no right or title to the same. Sperry, being a tenant, could not have questioned the title of the Ments heirs, and Hentig is in no better position, as he only obtained the leasehold interest of Sperry, which terminated just before the commencement of this action. It appears that Hentig obtained a judgment against Sperry upon which an execution was levied upon Sperry's leasehold interest in the property in question, and a sale was made to Manspeaker, who, it is claimed, held in trust for Hentig. He, therefore, acquired no more than Sperry's right, and as the relation between plaintiffs below and himself was that of landlord and tenant, he cannot be permitted to dispute their title.

He makes another claim of title which is equally

groundless. In 1866, the lots were sold to John D. Knox for taxes, and a tax deed was issued to him in 1870. It appears, however, that Knox

3. Quitclaim deed passes no title, when.

was not aware that a deed had been made to him, and shortly afterward permitted the Ments heirs to redeem the lots from taxes ; they paying the full amount which Knox held against the property. At the same time he executed a written receipt or release, the exact character of which is not shown by the testimony. About sixteen years afterward, Hentig informed Knox that he had a tax deed to the lots and that the title stood in his name, and requested him to make a quitclaim deed to the same. Knox then informed him that he did not have any interest in the lots, and did not wish to sign a deed unless it was to secure the ends of justice. He made the deed with the evident purpose of clearing the title for the real owners. At that time he owned no interest in the lots and could have asserted none as against the real owners. When Hentig obtained the deed he was informed that Knox had no interest in the lots, and hence he is in the same position as Knox and obtained no interest, because Knox had none to convey. He was put upon inquiry, and must be held to have had such information, as to payment of taxes, redemption from tax sale, and the *status* of the title, as Knox possessed. He knew that Knox had no title, and that he only made the deed for the purpose of clearing up the title as a matter of justice to the owner. Knox only received the nominal consideration of one dollar, or some such amount, and he testifies that he told Hentig that he would not sign the deed if it would do an injustice to any one, when Hentig assured him that "no injustice would be done by signing the deed." In view of the knowledge which Hentig possessed, and the circumstances under

which the quitclaim deed was obtained by him, we readily conclude that he took nothing as against the real owners of the lots.

The view which we have taken leaves no room for any question as to the Statute of Limitations, and none of the other questions discussed afford any ground for reversal or require further comment.

Judgment affirmed.