JOHN WISWELL v. CHARLES V. SIMMONS *et al.*

No. 15,456.  (95 Pac. 407.)

SYLLABUS BY THE COURT.

1. TAX DEEDS—*Acquisition by Life-tenant—Remainder-man Not Affected.* One who purchases the interest of the owner of a life-estate in a tract of land and goes into possession cannot defeat the title of the remainder-man by thereafter acquiring a tax title based upon a tax sale that was made before such purchase and that resulted from the delinquency of the original owner of the life-estate.

2. CONVEYANCES—*Deed and Bond to Reconvey Held a Mortgage.* Where at the same time a deed is made the grantee executes a contract to reconvey upon the payment of an existing debt owing by the grantor the transaction is in effect a mortgage, notwithstanding the grantee takes possession and refuses to accept an ordinary mortgage, giving as a reason that he does not wish to be at the expense of a foreclosure in case of a default.

3. TAX DEEDS—*Acquisition by Mortgagee of Life-estate in Possession—Accruing Taxes.* The mortgagee of a life-estate who is in possession of the mortgaged property, enjoying the income thereof, cannot as against the remainder-man acquire a tax title based upon taxes accruing during his occupancy.

4. ——— *Consideration in Part Taxes Owing by Grantee.* Where one who is disqualified to acquire a tax title based upon current taxes takes an assignment of an outstanding tax-sale certificate, as to which no such disqualification exists, and thereafter pays subsequently accruing taxes and causes them to be indorsed upon the certificate, a tax deed issued thereon will convey no title.

5. STATUTE OF LIMITATIONS—*Adverse Possession—Tax Title—Remainder-man.* The occupancy of realty by one who entered claiming under the owner of a life-estate will not be converted into an adverse possession so as to set the statute of limitation in operation against the remainder-man by the occupant's taking and recording a tax deed, where his relation to the property disqualifies him to acquire a title in that manner.

Error from Cherokee district court; CORB A. MC-NEILL, judge. Opinion filed April 11, 1908. Affirmed.

*Archie D. Neale,* and *E. L. Burton,* for plaintiff in error.

*C. D. Ashley,* and *W. B. Glasse,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: In 1881 the owner of a tract of land conveyed to H. L. Simmons a life-estate therein, with the remainder in fee to the children of such life-tenant. On December 10, 1886, Simmons executed a quitclaim deed for the property to W. H. Layne, who on the same day gave him back a bond for a deed agreeing to reconvey upon the payment of $603.25. Layne at once took possession, which he and his grantees have held ever since. The land was sold for the taxes of 1884 to a stranger, who paid the taxes of 1885. Layne bought the tax-sale certificate after he had taken possession, and later paid the taxes of 1886 and 1887 and had them indorsed thereon. He received a tax deed upon this certificate in 1889. His title subsequently passed by mesne conveyances to John Wiswell. In 1906 H. L. Simmons died, and his children thereupon brought ejectment against Wiswell. The plaintiffs rested upon a showing of the facts above recited, which were agreed to. The defendant introduced oral evidence intended to show that the quitclaim deed from Simmons to Layne was executed as security for the payment of a debt, and therefore, with the bond for a deed, in effect constituted a mortgage. The court made no specific finding upon this issue, but rendered judgment for the plaintiffs, from which the defendant prosecutes error.

If the transaction between Simmons and Layne is regarded as a conveyance, the assignment of the tax-sale certificate to the latter operated merely as a redemption from the tax lien. For the owner of a life-estate is disqualified to take a tax title to the prejudice of the remainder-man, even although the taxes upon

which it is based accrued before he acquired any interest in the land, at least in any case where they became due after the creation of the life-estate which he later obtained. This was expressly decided in *Lohmuller v. Mosher*, 74 Kan. 751, 87 Pac. 1140. There land was conveyed to Elizabeth Yambert for her life. She suffered the taxes to become delinquent, and one Durland obtained two tax deeds in consequence of such default. Later Elizabeth Yambert deeded to Laura E. Lohmuller, to whom Durland afterward quitclaimed. The court said: "After Laura E. Lohmuller had purchased the life-estate in the land her acquisition of the Durland tax titles merely redeemed the land from taxes." (Page 755.) The conclusion there announced was a necessary result of the application to the facts of that case of the general rule that a life-tenant cannot acquire an outstanding title or encumbrance for his sole benefit as against the remainder-man. (16 Cyc. 617, notes 23, 33.) This rule was applied to tax titles in *Phelan and others v. Boylan and others*, 25 Wis. 679, and in *Defreqse v. Lake*, 109 Mich. 415, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584. (See, also, *Crawford v. Meis*, 123 Iowa, 610, 99 N. W. 186, 66 L. R. A. 154, 101 Am. St. Rep. 337.) In the Wisconsin case cited it was said:

"The complaint alleges, as matter of law, that it was the duty of the defendant to have redeemed the land by payment of the taxes. This may or may not have been so. If the tenant had chosen to let the land go for the taxes, so that valid title and possession would have been acquired by a stranger, thus forfeiting his life-estate as well as the inheritance, it is possible that the heirs would have had no ground of complaint or cause of action against him. The taxes having accrued before the life-estate arose or tenancy existed, it may be that the tenant was not chargeable, at all events, with the duty of paying them. But be this as it may, there exist other grounds here for holding that he shall take no advantage as against the reversioners of the title he has acquired. The taxes here were a charge upon the land, a lien, in fact, upon the

life-estate of the tenant as well as the fee of the re-
versioners; and where that is the case a purchase by
the tenant, or title acquired by him in pursuance of
such charge, enures to the benefit of the reversioner as
well as himself.　The established doctrine is that a
tenant for life in possession, in the purchase of an
encumbrance upon the estate, is regarded as having
made the purchase for the joint benefit of himself and
the remainder-man or reversioner, and cannot hold it
for his own exclusive benefit." (Page 681.)

The effect of the decision in the Michigan case cited
was thus stated in the sixth head-note prepared by the
editors of the Lawyers' Reports, Annotated:

"A devisee of a life-estate in remainder cannot cut
off the remainders limited upon his life-estate by pur-
chasing the property at tax sales caused by default of
the first taker." (32 L. R. A. 744.)

It would be difficult to say that the quitclaim deed
and bond to reconvey, considered alone, should be in-
terpreted as a mortgage.　That they bore the same date
would doubtless justify regarding them as forming
parts of the same transaction.　But the prevailing rule
seems to be that where the papers show upon their face
a purchase and agreement for a resale there is no pre-
sumption that a mortgage was intended.　It is so stated
in volume 27 of the Cyclopedia of Law and Procedure,
at page 970.　Of the cases there cited the one in which
the point is most fully discussed is *Gassert v. Bogk,*
7 Mont. 585, 19 Pac. 281, 1 L. R. A. 240.　The decisions
are there reviewed and the conclusion is reached that
while the authorities are in conflict the majority sup-
port the text statement.　In the opinion it was said:

"It will appear [by cases] hereinafter cited that the
courts of last resort in Texas and Michigan, Illinois,
Wisconsin, Indiana and Tennessee have held that a
deed with a contemporaneous contract to reconvey are
not *per se* mortgages.

"The third class of cases is that in which the courts
hold that a deed with contract to reconvey are *per se*
mortgages.　This class includes the cases from Ver-

40—77 KAN.

mont, Maine, Massachusetts, and Pennsylvania." (Page 597.)

In this classification Michigan seems to be placed in the wrong category, for in *Jeffery v. Hursh,* 58 Mich. 246, 25 N. W. 176, 27 N. W. 7, it was said:

"It is now settled, as well as any principle of law can be, that an absolute deed, with a bond or separate defeasance or agreement executed at the same time to reconvey the estate upon payment of a certain sum of money, constitute a mortgage, if the instruments are of the same date, or are executed and delivered at the same time, and as one transaction; and when this is the case it is a conclusion of law that they constitute a legal mortgage." (Page 257.)

The Montana case was affirmed by the United States supreme court. (*Bogk v. Gassert,* 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631. See, also, 1 Jones, Mort., 6th ed., § 247a.) In *Pope v. Nichols,* 61 Kan. 230, 59 Pac. 257, the inquiry being whether the contemporaneous execution by a grantee of a bond to reconvey gave notice to a third person that the transaction was intended as security for a debt, various grounds were suggested upon which such an inference might be drawn. In the present case the bond recited an agreement to reconvey upon the payment of a note for $603.25 to one T. P. La Rue, but did not clearly show by whom such payment was to be made. It therefore failed to disclose affirmatively the existence of a debt owing by Simmons. This omission, however, was supplied by the evidence. The defendant testified that the quitclaim deed was given as security for the payment of a note to La Rue, which he signed as surety for Simmons. In that case the transaction was in effect a mortgage, notwithstanding Layne went into immediate possession of the premises (*Clark v. Landon,* 90 Mich. 83, 51 N. W. 357) and had refused to accept a mortgage, giving as a reason that he did not wish to be at the expense of a foreclosure in the event of a default. An instrument which is in form a deed is in effect a

mortgage if it is intended as security for a debt which the grantor remains under an obligation to pay. The existence and continuance of a debt is the final test. (*Fabrique v. Mining Co.,* 69 Kan. 733, 77 Pac. 585, and cases cited.) The fact that one or both of the parties may have had a wholly mistaken idea as to their respective rights under it cannot change its essential character.

Conceding the transaction between Simmons and Layne to have been a mortgage, was Layne thereby disqualified to acquire a tax title against the remaindermen—the children of Simmons? This court is committed to the doctrine that the mere relation of mortgagee does not prevent the acquisition of a valid tax deed (*McLaughlin v. Acom,* 58 Kan. 514, 50 Pac. 441), although the rule is otherwise in many jurisdictions, perhaps in the greater number. (See 27 A. & E. Encycl. of L. 957, and dissenting opinion in *Jones v. Black,* 18 Okla. 344, 347, 88 Pac. 1052, 90 Pac. 422.) But the court has been careful to leave the question open with respect to a mortgagee who has possession of the property involved. Whether a mortgagee may ever assert a title under a deed based upon taxes that accrued while he was enjoying the rents and profits, it is clear that Layne as the mortgagee of a life-interest in the occupancy of the property owed a duty to the remainder-men to pay at least the current taxes out of its income. In this respect he stood upon no higher ground than the owner of the life-estate, out of whose title his own interest had been carved. His rights with regard to taxes that had accrued or tax sales that had been made before he obtained possession need not now be determined. True, his tax deed was based upon a certificate that had been issued before he acquired any interest in the land, but after he had entered into possession, instead of paying the subsequently accruing taxes as one under an obligation to do so, he caused them to be indorsed upon the certificate as an incre-

ment to the lien evidenced thereby. Therefore the consideration for the tax deed which he received was made up in part of taxes which accrued while he was in possession and which he owed a duty to the remainder-men to pay. In such a situation the deed cannot be upheld against them as a conveyance of title in virtue of its being founded in part upon earlier taxes. For the purpose of determining his capacity to acquire a tax title the consideration cannot be apportioned—it must be treated as an entirety. And a part of it being composed of taxes which he was bound to pay, the transaction must be regarded as a redemption.

The defendant invokes the protection of the general statute of limitation and also of that relating to actions against claimants under tax deeds. The plaintiffs' right of possession did not accrue until the death of their father terminated the life-estate. The general statute did not run against them while the defendant rightfully occupied the property, because while that situation existed no right to sue in ejectment could accrue to them. And even if in the absence of a special statute a remainder-man may ever bring an action against the life-tenant to settle the title and protect his interest, he cannot do so until his rights have been questioned or denied. Ordinarily one who takes a deed purporting to vest complete ownership in him may be deemed thereby to assert an absolute title, but here the recording of the tax deed by Layne did not convert his possession into an adverse holding against the children of Simmons, because he was disqualified to acquire a title by that means. This follows from what has been decided heretofore with regard to the statute of limitation enacted for the protection of claimants under tax sales. Section 7680 of the General Statutes of 1901 provides that a proceeding for the recovery of lands sold for taxes must be brought within five years, and section 7682 that the recording of a tax deed shall be deemed such an assertion of title as to enable the

owner to maintain ejectment, but in the third paragraph of the syllabus in *Woodman v. Davis,* 32 Kan. 344, 4 Pac. 262, it was said of these sections:

"Where the objection to a tax deed goes, not to the proceedings, but to the power of the party to take the title, and such party is not in a position to take anything, neither the limitation in section 141 nor section 143 of chapter 107, Compiled Laws of 1879, has any application."

The judgment is affirmed.