## HUMPHREY CALHOUN V. ED ANDERSON.
### No. 15.369. (98 Pac. 274.)
### SYLLABUS BY THE COURT.

CONVEYANCES—*Deed Presumptively a Mortgage.* Where at the time of the execution of a deed the grantee and grantor execute a contract by which the former agrees to sell and the latter agrees to buy the land for the amount constituting the consideration of the deed the transaction is at least presumptively a mortgage.

Error from Kingman district court; PRESTON B. GILLETT, judge. Opinion filed November 7, 1908. Reversed.

*Thornton W. Sargent,* and *George L. Hay,* for plaintiff in error.

*J. A. Brubacher,* and *James Conly,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: In the course of litigation involving other matters Humphrey Calhoun, on December 31, 1904, filed an answer which included a cross-petition against a codefendant, Ed Anderson, asking that an instrument in the form of a deed from Calhoun to Anderson be declared to be in effect a mortgage, that the amount of the debt thereby secured be ascertained by an accounting, and that he be permitted to redeem the land. On the trial of the issues so tendered the district court sustained a demurrer to the evidence of Calhoun, and he prosecutes error.

That the plaintiff in error has taken the proper steps to procure a review is shown only by a journal entry which was made without notice to the adverse party, *nunc pro tunc*, and was not based on any memorandum, minutes, or other written data. The defendant in error on this ground challenges the sufficiency of the record. It has been determined, however, that a district court upon its own knowledge of the facts, and without notice to any one, may at any time make its records speak the truth and show what had actually been done at some earlier date, even where no immediate entry was made regarding it. (*Christisen v. Bartlett*, 73 Kan. 401, 84 Pac. 530, 85 Pac. 594.)

Calhoun's evidence, among other things, tended to show these facts: He had given a mortgage on the land involved to a sister of Anderson, and he owed Anderson personally an amount sufficient to make a total indebtedness of $10,285, subject to certain deductions claimed by him on account of usurious interest and other matters. He deeded the land to Anderson in consideration of this debt, and at the same time, December 15, 1902, received from him an instrument the substantial part of which reads as follows:

"Said party of the first part [Anderson], for and in consideration of ten thousand two hundred and eighty-five dollars ($10,285) and taxes dollars, of which eleven hundred dollars ($1100) is in hand paid by said second party [Calhoun], the remainder of said consideration to be paid as hereinafter provided, hereby promises and agrees to sell and convey, on the first day of January, 1905, at Cheney, Kan., time being of the essence of the contract, by good and sufficient warranty deed conveying an indefeasible estate in fee simple, to said party of the second part, his heirs and assigns, the following-described real estate. . . . The said Humphrey Calhoun, party of the second part, in consideration of the foregoing covenants, agrees to pay to the said Ed Anderson, party of the first part, for the above-described real estate, the said sum of $10,285 dollars, as follows, to wit: $1100 cash in hand on signing this contract, and $4185 dollars on the first day of

January, 1905, upon delivery of deed as hereinbefore provided, time and punctuality being material and of the essence of the contract. And said party of the second part shall, at the time and place last mentioned, execute and deliver to said party of the first part, or his legal representatives, his promissory note secured by a complete mortgage of said land, with interest at the rate of —— per cent. per annum, to secure the payment of $5000 dollars on the —— day of ———, 18—, and ———— dollars on the —— day of ———, 18—, and ———— dollars on the —— day of ———, 18—. In case of failure of said party of the second part to perform any of his covenants herein, the said party of the first part shall have the right to enter and repossess himself of said premises without further notice or delay.

"It is further understood and agreed that either party to this contract shall be entitled to recover from said other party damages for the failure of the other party to comply with the terms of this contract."

The debt owed by Calhoun to Anderson was evidenced by a note and secured by a chattel mortgage, neither of which instruments was surrendered or released. The $1100 cash payment was made by turning over a land contract. Calhoun remained in possession of the land, executing a lease by which he agreed to pay as rent an amount equal to the interest at 10 per cent. on the balance of the purchase-price. In subsequent conversations between Calhoun and Anderson the transaction was spoken of as leaving to the former the real ownership and control of the property, subject only to the payment of the amount of his indebtedness.

This evidence, if accepted as true, established that the deed was in legal effect a mortgage—Calhoun having the real title to the land, Anderson only a lien upon it. In *Wiswell v. Simmons*, 77 Kan. 622, 95 Pac. 407, authorities are cited (although a conflict is noted) holding that the execution of a bond for a reconveyance at the same time that a deed is given raises a presumption that the transfer of title is for security only. But here the grantor need not rely upon that presumption.

The contract accompanying the deed did not merely give Calhoun the right to purchase—it bound him to do so. He specifically agreed to pay Anderson the stipulated price for the land. This made the obligation mutual. (*Brownson v. Perry,* 71 Kan. 578, 81 Pac. 197.) In view of this consideration it is doubtful whether other circumstances could give the transaction any other effect than that of a mortgage. But the evidence all tends to support the security theory, unless the giving of a lease by Calhoun be deemed to have a contrary tendency. If so it is fully offset by the fact that the amount named as rent just equalled the interest on the indebtedness. The conduct of the parties, especially with regard to the outstanding evidences of the debt, would alone in a doubtful case resolve the doubt against the hypothesis of an absolute conveyance.

It results that the judgment must be reversed and the cause remanded for further proceedings, and it is so ordered.