### Roberts, et al. v. Menifee, et al.

(Decided September 18, 1912.)

Appeal from Rockcastle Circuit Court.

Ejectment—Recovery of Intruder—Proof of Possession Sufficient.—
While the general rule is that the right of the plaintiff to recover in ejectment rests on the strength of his own title, yet as against an intrusion by a stranger without title or color of title on a peaceable possession, such possession alone is sufficient to maintain the action.

C. C. WILLIAMS; S. D. LEWIS for appellants.

J. W. BROWN for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiffs, John Roberts and George Roberts, brought this action against defendants, Rufus Menifee and A. C. Menifee, to recover a tract of ten acres of land located in Rockcastle County, Kentucky. Plaintiffs alleged in this petition that they were the owners and entitled to the possession of the land. Defendants denied plaintiffs' title, and pleaded title in themselves. By amended petition, plaintiffs pleaded that they had been in the actual, peaceable and adverse possession of the land for more than fifteen years prior to the institution of the action, and were in the possession of same on the —— day of November, 1909, when the defendants forcibly, and over the objection and protest of the plaintiffs, took possession of the tract of land described in the petition, and had since that time wrongfully, forcibly and with arms, held said land; that defendants had no title to said land, or any part thereof, and that at the time they took possession of the land, and at the time the amended petition was filed, were trespassers thereon. Upon the conclusion of plaintiffs' evidence, the court directed a verdict in favor of the defendants. Judgment was entered accordingly, and the plaintiffs appeal.

According to the evidence for plaintiffs, Green Roberts purchased a tract of about forty acres of land from James Fish, by deed dated March 13, 1852, and recorded in the Rockcastle County Clerk's office. This tract of land adjoins Green Roberts' home place. Green Roberts died in 1864. During the remainder of his life, he claimed the land. Green Roberts left a widow, three sons and a daughter. The daughter died, leaving children. Plaintiffs, John Roberts and George Roberts, agreed to pay their mother's funeral expenses and other debts and take the land. The other children signed writings to that effect, but no writings are introduced in evidence. About nine years before the suit was brought, plaintiffs went and fenced up about nine acres of the tract in controversy. They planted corn in a field for four or five years, and built the cabin on the place about two years before the suit was brought. The defendants tore the fence away, and also moved the house and built a house for themselves out of the lumber. Prior to the time that

the fence was built, no one was in possession of the land but plaintiffs. In answer to the question, "Well, after your father's death, and before you put the fence around it about nine years ago, who was in possession of it, if anybody?" John Roberts answered, "Nobody." At the time of the institution of the action, the defendants were in possession of the land. On cross examination, John Roberts testified that he and his brother also purchased ten acres of land from Jerry Frith. He claimed to have purchased it of the Commissioner who disposed of the Robert George land on the latter's death. On re-examination, witness stated that the forty acres of land deeded to his father by James Fish embraced the 10¼ acres of land in controversy. He also testified that after the war, he and his brother hauled wood off the land.

George Roberts testified that his father's deed covered the land in controversy. Since his father's death only he and his brother claimed the land. The tract of land in controversy is a part of the place where plaintiffs lived. They went on the land and got timber from it. After the fence was built, the defendants kept tearing it down. Had the defendants arrested two or three times. Never gave the defendants permission to take the fence or go on the place. On cross-examination, witness stated that his father had the land in his possession. He did not have it fenced, but he had a straight marked line around the boundary. On being asked how he and his brother had it in their possession, witness answered: "Me and my brother had this land in possession because our mother had give us this land, willed us this land. Because my father owned it, and she had it in her possession and then it went on to the heirs—all of it together." When they built the fence about nine years before, witness testified, they enclosed all the land but about one acre. Prior to the time that defendants took possession of the land, neither one of them claimed it. After they began to claim the land, plaintiffs obtained a deed from Frith. Never attempted to fence the land until eight or nine years before the time he testified. The forty acres of land which his father bought from Fish constituted his father's homestead. His father owned a tract of land there, and the forty acres came right along by it. After purchasing the land, his father claimed to the calls of his deed. From the time of his

father's death, he and his brother were in possession, and had been in possession about thirty-five years. The house they were living in was on the tract which their father owned. Neither he nor his brother lived on the tract in controversy.

Joe Roberts, a brother of the plaintiffs, testifies that his father purchased the land in '51; that since that time his brothers, John Roberts and George Roberts, had been in possession of it; that they had fenced it about eight years before he testified. He never had any interest in the land, as he sold it to his brothers. In answer to the question, "Now, then, the plaintiffs, your brothers John and George, have been in possession of it ever since?" witness answered, "Yes, sir, they have claimed it ever since." In answer to the further question, "Well, have they been in possession of it?" the witness answered, "Well, they haven't had it fenced only about eight years." On cross-examination, the witness stated that Robert George ran around it and took the land in posssesion. A part of the forty acres which his father bought from Fish, consisting of about twenty acres, was sold to pay the purchase money. George Roberts lived in his father's old place. In answer to the question, "Is that the first time it was ever taken into possession? I am talking about this ten acres?" witness answered, "That piece of land laid out and nobody ever did bother it much, only they claimed it and got wood off of it. Part of it in the hollow and part of the hill." In answer to the question, "Did anybody have it in possession up to the time your brothers fenced it eight years ago?" witness answered, "If they did, I don't know it. It never was fenced."

Another witness testified that he heard defendant, A. C. Menifee, say that Roberts took the land away from Frith, and he was going to take it away from Roberts; that he had no papers to show that it belonged to him, but the Roberts did not have any either.

For defendants, it is insisted that the court properly directed a verdict in their favor because plaintiffs failed to show title, either of record or by adverse possession. It is true that plaintiffs failed to show a record title, and it may be doubted if their evidence, taken as a whole, is sufficient to show adverse possession for the statutory period. The evidence, however, clearly shows that about

eight or nine years prior to the institution of the suit, plaintiffs built a fence around the land in controversy. Later on, they built a house upon the land. It is also shown that one of the defendants admitted that they had no title to the land, and stated that Roberts had taken the land away from Frith and they were going to take it away from Roberts. It further appears that the defendants tore down the fence and moved the house which plaintiffs had built, and used the lumber with which to build a house for themselves. Here, then, we have a case where plaintiffs were in peaceable possession of the premises, and defendants, without color of title, intruded upon the land and took possession thereof. While it is true that a party cannot maintain an action to recover land on a mere naked possession where the defendant who enters and ousts that possession has color of title, it is well settled that where the defendant enters tortiously without authority and without color of title, a plaintiff can maintain an action against him on such prior possession. The principle is that possession is prima facie evidence of title, and that consequently, he who is in possession may, by proof of that fact alone, maintain an action against the defendant who has deprived him of that possession wrongfully and without color of title. Having the possession, he has the right to retain it against every one except the person who has legal title to it. Tucker, &c. v. Phillips, 2 Met., 416; Campbell v. Roberts, 3 A. K. Marsh., 623; Scroggins, et al. v. Nave, et al., 119 S. W., 158, 133 Ky., 793; Reynolds' Ex'r. v. Boyd, 92 Ky., 249.

In Rhule v. Seaboard Air Line Ry. Co., 102 Va., 343, the rule is thus stated:

"The general rule is that the right of a plaintiff to recover in ejectment rests on the strength of his own title. However, as against an intrusion by a stranger without title on a peaceable possession, such possession alone is sufficient to maintain the action."

To the same effect is Horton v. Murden, 117 Ga., 72; Hentig v. Pipher, 58 Kan., 788; Anderson v. Moore, 84 Miss., 400; Dothard v. Denson, 72 Ala., 541.

As the evidence shows that plaintiffs were in possession, and that defendants intruded on their possession without title or color of title, it follows that mere proof of these facts is sufficient to make out a prima facie case in favor of plaintiffs. Therefore, the Circuit

Court erred in directing a verdict in favor of the defendants.

Judgment reversed and cause remanded for a new trial consistent with this opinion.