No. 20,159.

L. L. GILMORE, *Appellee,* v. ANNETTA H. HOSKINSON, as Administratrix, etc., *Appellant,* et al.

### SYLLABUS BY THE COURT.

1. CONTRACT—*Purchase of Real Estate—Contract Assigned—Evidence—Transactions with Deceased Party.* In an action by one who succeeds to the rights of another under a contract for the purchase of real property, by assignment of the contract and by quitclaim deed from the contract purchaser, against the administratrix and heirs of the person making the contract for the sale of the real property, the assignor of the contract and grantor in the quitclaim deed is incompetent to testify concerning any transaction or communication had personally by him with the deceased party to the contract.

2. WARRANTY DEED—*Contemporaneous Contract—Deed and Contract Constitute a Mortgage.* Where a contract purchaser of land, unable to make payments as stipulated, executes a warranty deed to a third party, and at the same time takes from that party a contract for the sale and conveyance of the land, and in that contract promises to pay for the land an amount substantially equal to the consideration named in the deed and to pay the taxes on the land, and retains possession thereof, the deed and contract constitute a mortgage to secure the payment of the amount to be paid under the contract.

3. DEED—*Liability on Covenant for Warranty Deed.* The estate of one who by contract agreed to convey real property by warranty deed is not liable to the contract purchaser or his assignee or quitclaim grantee for failure to make a warranty deed, where that failure is caused by the failure of the warranty of the contract purchaser who conveyed the real property by warranty deed to the one who contracted to convey the land at the time the warranty deed was delivered to him.

4. DEED—*Contract—Both Constitute a Mortgage—Must be Recorded Together.* A deed to real property, and another writing showing that the deed is a mortgage, must be recorded together at the same time and place, under section 4020 of the Revised Laws of Oklahoma, 1910, in order to have effect as a recorded mortgage; and if not so recorded, the effect is the same as if the mortgage were not recorded.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed May 6, 1916. Reversed.

*J. S. Simmons,* and *K. K. Simmons,* both of Hutchinson, for the appellant.

*Henry Lampl, Tom Elcock,* both of Wichita, *W. G. Fairchild,* and *H. S. Lewis,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff recovered judgment against the administratrix of the estate of George M. Hoskinson for the rescission of a contract for the purchase of real property and for the amount that had been paid thereon. The administratrix appeals.

Prior to January 17, 1910, S. R. Janes contracted to purchase a certain quarter section of land in Grady county, Oklahoma. By a general warranty deed dated January 14, 1910, he and his wife conveyed this land to George M. Hoskinson. The deed was acknowledged by Janes, on January 14, 1910, and by his wife three days later. January 17, 1910, George M. Hoskinson, by written contract, agreed to convey the land to Janes for the sum of $3100, with interest at the rate of seven per cent, and acknowledged receipt of payment of $200. Five hundred dollars was paid July 17, 1910, leaving a balance of $2400 unpaid, which was to be paid in 1915. Interest payments were made on the contract. The contract was acknowledged before the same notary public that took the acknowledgment of Janes' wife to the deed. The contract bound Janes absolutely to make payments promptly of the several sums of money. It also provided that when payments were made Hoskinson would execute to Janes a "deed, conveying said premises in fee simple, with the ordinary covenants of warranty as to incumbrances existing against said premises at the date of this contract." No mention is made in the contract of any other party, but Hoskinson's wife also signed it. Janes retained possession of the land and agreed to pay the taxes thereon. The deed and contract were both recorded in the proper office, but not at the same time or place. Afterward Hoskinson died, and his widow, Annetta H. Hoskinson, was appointed administratrix of his estate by the probate court of Reno county, Kansas. This administration was still pending at the time of the trial of this action.

September 10, 1910, Janes and his wife transferred all their right, title, interest and claim to the land described in the contract to the plaintiff, by quitclaim deed and by assignment written on the contract.

March 20, 1913, action was commenced in the district court

of Grady county, Oklahoma, to quiet title and for the possession of this real property, by W. S. Farmer and others against Janes, Annetta H. Hoskinson as administratrix, and the heirs of George M. Hoskinson. That action was pending at the time of the trial of the action now before this court. It is stated in the briefs that judgment has since been rendered in favor of Farmer.

July 17, 1913, the plaintiff tendered to defendant Annetta H. Hoskinson the amount due on the contract, $2400, and demanded of her that she execute a warranty deed to him for the property. His tender was coupled with a notice that if the deed was not made within five days action would be commenced to rescind the contract. No deed was made.

The plaintiff contends that the contract in controversy is a contract for the purchase and sale of real property. The defendant contends that the contract, together with the deed to the property, constitutes a mortgage to secure the payment of a sum of money loaned.

1. S. R. Janes, who had been subpœnaed as a witness, was not present at the trial, and in lieu of a formal application for a continuance, Mr. Simmons, attorney for Annetta H. Hoskinson, administratrix, stated:

"In regard to the offer of testimony of the witness S. R. Janes, who is not present at this time, we expect to prove that he was the S. R. Janes mentioned in the pleadings and in the contract in question; that some time prior to the date of the contract and of the deed, S. R. Janes had contracted to purchase this land from parties in Oklahoma and had made a deposit on the purchase of the same; that he was unable to raise the rest of the purchase money and applied to George M. Hoskinson for a loan to complete the purchase of the same; that said Hoskinson agreed with him that if he would make him a deed to the land that he would loan him the money, to-wit, $2900, and would also give him a contract for a reconveyance of the land on payment of that amount of $2900 and interest on the same at seven per cent; that in pursuance to said negotiations Mr. Hoskinson loaned to Mr. Janes the sum of $2900, and Mr. Janes deeded the land to Mr. Hoskinson by warranty deed, copy of which will be introduced, and Mr. Hoskinson executed and delivered to Mr. Janes the agreement to reconvey, being the agreement sued on in this case; that there was only $2900 to be repaid, and the total consideration of the contract was $2900; that the $200 mentioned in the contract as having been paid was not paid; that the consideration of $3100 was placed in the contract so that the blank reciting the amount of the present payment could be filled in with the words 'Two Hundred Dollars'; that S. R. Janes is the

assignor of the contract which he testified George Hoskinson executed for a reconveyance of this land in question, and that George Hoskinson, the husband of the present defendant Annetta H. Hoskinson, died in January, 1912, and that Annetta H. Hoskinson is the administratrix of his estate."

The plaintiff admitted that Janes would testify as above set out if he were present, but objected to the competency of the testimony on the ground that it concerned transactions had personally by the witness with Hoskinson, deceased. The objection was overruled at the time, the court stating that it would be taken up at the proper time. It does not appear that this matter was given any further consideration.

The evidence of Janes shows that the transaction between him and Hoskinson constituted a mortgage. It is therefore necessary to determine the question of the competency of this evidence. This is controlled by chapter 229 of the Laws of 1911 (amending Civ. Code, § 320), which in part reads:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person, . . . nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case."

The statute in substance says that an assignor of a thing in action shall not be allowed to testify in behalf of *such party,* and means by the word "party" either party to the action, where one of the parties claims to have acquired title directly or indirectly from the deceased person. This being the correct interpretation of the statute, Janes was incompetent to testify concerning any transaction he had with George M. Hoskinson, for the reason that Gilmore acquired his title indirectly from Hoskinson. All the evidence of Janes concerning the application for a loan, the negotiations concerning the same, what transpired between Janes and Hoskinson when the deed and contract were written and delivered, how these came to be written, and the purpose for which they were written, is incompetent, and should not be considered at this time.

2. Eliminating the incompetent evidence of Janes, there remain the deed and contract, which were executed on the same day and presumably as part of one and the same transaction. We have the evidence of Janes that he had contracted to pur-

chase this land from parties in Oklahoma, and had made a deposit on the purchase price, but was unable to raise the rest of the purchase money. We also have the evidence of Mrs. Hoskinson that she drew the contract for Hoskinson; that Janes was to have a deed ready to deliver to Hoskinson on the delivery of the contract; that after writing the contract she went home, and that Hoskinson came home with the deed. When the transaction was completed, Janes was indebted to Hoskinson in the sum of $2900. The land had been deeded to Hoskinson for a named consideration of $2866. Janes had a contract with Hoskinson for a reconveyance of the property when Janes had fully paid the $2900 with interest. Before the transaction was completed, Janes had purchased this property, but was unable to pay for it. Arrangements were made for the execution of the deed and the contract, to be completed at the same time.

There is but one reasonable conclusion to draw from this situation, and that is that the deed and contract constituted a mortgage from Janes to Hoskinson to secure the payment of $2900 with interest. This is supported by *Bank v. Kackley,* 88 Kan. 70, 127 Pac. 539, where this court said:

"Whether a conveyance absolute in form and a contemporaneous agreement to reconvey constitute a mortgage, depends upon the existence or nonexistence of a debt. If the deed be made to secure a debt it is in legal effect a mortgage." (Syl. ¶ 1.)

(See, also, *McNamara v. Culver,* 22 Kan. 661, 668; *Calhoun v. Anderson,* 78 Kan. 746, 98 Pac. 274; *Bank v. Edwards,* 84 Kan. 495, 115 Pac. 118.)

The deed and contract constituting a mortgage, the plaintiff is not entitled to any judgment, except that of cancellation of the mortgage when it is paid. The estate of Hoskinson would be entitled to foreclose the mortgage if it is not paid.

3. Assuming that the deed and contract are not a mortgage, could Janes recover in this action if he were the plaintiff? He made a warranty deed to Hoskinson. Janes' title to the property was bad. He never acquired good title. When he made the deed he did not have title to the property. Hoskinson agreed to make a warranty deed to Janes. Hoskinson could not make a good warranty deed, for the reason that he did not get good title from Janes. Janes could not have re-

covered damages from Hoskinson on account of Hoskinson's failure or inability to make a good warranty deed, for the reason that Hoskinson's inability to make such deed originated with Janes and came to Hoskinson through Janes' warranty deed. If Janes could recover from Hoskinson on his promise of warranty, then Hoskinson could recover from Janes a like amount on his warranty. One should offset the other. Janes could not recover in this action.

The plaintiff stands in Janes' shoes. By one instrument, an assignment of the contract between Janes and Hoskinson, the plaintiff becomes the assignee of Janes and succeeds to his rights under the contract. By the other instrument, a quitclaim deed, the plaintiff gets the title to the property as Janes held it under the contract, and takes only what Janes could lawfully convey. (*Hentig v. Pipher,* 58 Kan. 788, 791, 51 Pac. 229; *Knight v. Dalton,* 72 Kan. 131, 83 Pac. 124; *Oliver et al. v. Piatt,* 44 U. S. 333, 11 L. Ed. 622; *May v. Le-Claire,* 78 U. S. 217, 20 L. Ed. 50, 53; 8 R. C. L. 1024; 1 Devlin on Real Estate, Deeds, 3d ed., § 27; 3 Washburn or Real Property, 6th ed., § 2239; 2 Tiffany on Real Property, § 377.)

The plaintiff, under both the assignment and the quitclaim deed, has exactly the same rights and is subject to the same disabilities as Janes. If Janes could recover on the promise of warranty made by Hoskinson, then the plaintiff can recover. Janes could not recover, on account of the failure of his warranty to Hoskinson. It follows that the plaintiff could not recover against Hoskinson on that warranty. If he could not recover against Hoskinson, he can not recover against Hoskinson's estate.

4. Section 4020 of the Revised Laws of Oklahoma, 1910, introduced in evidence, reads:

"Every grant of real property, or of any estate therein, which appears by any other writing, to be intended as a mortgage within the meaning of this chapter, must be recorded as a mortgage; and if such grant and other writing explanatory of its true character are not recorded together at the same time and place, the grantee can derive no benefit from such record."

The plaintiff claims the benefit of this statute. This statute does not make a deed out of a mortgage, consisting of a deed and a defeasance in separate instruments, where they are not recorded at the same time and place, but defeats the record as

a mortgage and makes it the same as though the mortgage had not been recorded. The statute is for the protection of the mortgagee, by having his mortgage placed on record properly. It does not affect the rights of the mortgagor, the grantor in the deed.

The judgment is reversed and the cause is remanded with directions to proceed in accordance with this opinion.