No. 28,356.

JOHN HANDRUB, *Appellee,* v. SAMUEL GRIFFIN, *Appellant.*

(275 Pac. 196.)

Opinion filed March 9, 1929.

*Adrian S. Houck*, of Medicine Lodge, for the appellant; *Samuel Griffin*, of Medicine Lodge, *pro se*.

*Riley W. MacGregor*, of Medicine Lodge, *J. N. Tincher* and *Rubert G. Martin*, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal involves the construction of a deed and accompanying contract. Appellant maintains that they constitute a conditional sale of the land therein described, while appellee asserts they constitute a trust. The trial court held that it was not a sale, that the grantee in the deed was a trustee, and ordered a reconveyance and an accounting for the rents and profits. The grantee appeals.

The petition for reconveyance alleges some of the circumstances leading up to the making of the deed and contract as well as the conduct of the parties thereafter, and evidence was introduced along these lines in addition to the introduction of the deed itself and the contract accompanying it. The plaintiff, an elderly man, lived in Barber county and owned 1,100 acres of land in that county, unencumbered, and considerable personal property. In 1919 he was arrested on a very serious charge, and just a few days later was made defendant in two civil actions connected with the criminal charge, where the damages asked for amounted to more than $40,000. Mr. Griffin, the defendant in this action, was employed by the plaintiff herein to defend him in these three actions. Before any of the cases reached trial they were all suddenly dismissed and compromised at a time when Mr. Griffin was not at home. The accused gave a deed to 300 acres of his land to two parties and a mortgage to

two others for $6,000 on the remaining 800 acres. Later he consulted with Mr. Griffin, and it was decided to make an effort to recover the land and set aside the deed and mortgage. In November, 1919, he made a contract with Mr. Griffin and Mr. J. W. Davis to commence proceedings for that purpose, which they did, and shortly thereafter, on May 3, 1920, he was rearrested on the same charge. He then employed Mr. Griffin and Senator Davis to defend him in the criminal case for $3,500. At the same time there was other expense with other parties in connection with these trials amounting to $1,500. Separate notes were given for these two amounts to a local bank, and by agreement a second mortgage was given to the bank for $5,000 on the 800-acre tract. The civil action to set aside the deed and mortgage was tried twice with a hung jury each time as a result. The note and mortgage had in due course reached the hands of an innocent purchaser, a trust company, and it commenced a foreclosure proceeding and obtained a judgment in October, 1921. The land was sold by the sheriff to the trust company for the amount of the first mortgage. In the meantime the accused had been tried, found guilty, and sentenced to a term in the penitentiary, from which he took an appeal. He tried to borrow money on the land to redeem it and thus make good the $5,000 second mortgage, of which $3,500 was for attorney fee. Mr. Griffin had advanced and paid a part of this amount to Mr. Davis, so that he was the main one interested in it. The land was worth more than the first mortgage, but loan companies refused to make the loan to one convicted of crime. This was the situation as shown by the evidence when the deed and contract in question were executed on December 31, 1921.

The deed was in the form of a regular warranty deed, consideration $16,000, and excepted the judgment for $7,286.50 and the $5,000 mortgage. The following is a copy of the contract signed by both parties:

"This Agreement, Made and entered into this 31st day of December, 1921, by and between John Handrub, party of the first part, and Samuel Griffin, party of the second part, both of Barber county, Kansas.

"Witnesseth: Whereas, said party of the first part has transferred by a warranty deed to the said party of the second part the following-described real estate, located and situated in Barber county, Kansas, to wit: [description follows] for and in consideration in the sum of five thousand and no/100 dollars, and subject to a certain judgment set forth in said deed.

"Now, therefore, it is agreed by and between the parties hereto that if the said party of the second part shall sell or otherwise dispose of the above-

described real estate for a sum in excess of the said five thousand and no/100 dollars, and the judgment of seven thousand two hundred eighty-six and 50/100 dollars, together with interest from the 1st day of October, 1921, at the rate of eight per cent per annum and the costs and accrued costs of said action, in which said judgment was rendered, then said party of the second part agrees to pay the said party of the first part said excess amount.

"It is further agreed that if the said party of the first part should at any time pay to the said party of the second part said sum of five thousand and no/100 dollars hereinabove mentioned, the said party of the second part agrees to deed back to the said party of the first part all of said real estate subject to the judgment hereinabove set forth.

"The said party of the second part does further agree to use his best efforts and endeavor to obtain as large a price for said land as he can possibly get."

The evidence further shows that Mr. Griffin procured a loan of $10,000 on the land in October, 1922, by personally signing the note and mortgage, paid off the judgment, and had the local bank release the $5,000 mortgage so as to make the new loan a first lien. Since that time the defendant herein has been using, developing and improving the farm, has not accounted to the plaintiff for any returns from it, but once sent him a check for $25 because he understood plaintiff was needing funds. On appeal the criminal case was affirmed, but the accused was never imprisoned in the penitentiary, having been paroled.

This action was commenced July 12, 1926, which was after the date of the parole. It was tried to the court and decided in favor of the plaintiff on November 8, 1927. The findings of the court are contained in the following paragraphs of the journal entry:

"And the court, being fully advised in the premises, finds that the evidence established the claims made by the plaintiff in his amended petition, and that the evidence fails to establish the claims made by the defendant in his answer, and the court announced and found that the plaintiff is the owner of the following-described real estate, lying and situate in Barber county, Kansas, to-wit: [Description follows.]

"That the deed made from plaintiff to defendant was not a sale of said real estate, and that the plaintiff did not part with his title to said real estate by the making of said deed, and that the defendant did not obtain title to said real estate by the taking of said deed, and that the plaintiff is the owner of said real estate.

"The court further finds that the defendant has received the income from said real estate since 1922, and that the plaintiff was entitled to said income, and is entitled to an accounting by the defendant for said income.

"The court further finds that during the time the record title has stood in the name of the defendant, the defendant has placed a mortgage on said real estate to take up a mortgage placed thereon by plaintiff.

"The court further finds that the defendant obtained his deed to the premises above described from the plaintiff while he was the attorney for the plaintiff, while the plaintiff was under arrest, and while the relation of attorney and client existed. That the plaintiff is entitled to a conveyance from the defendant, conveying his property back to him.

"The court further finds that the allegations of the plaintiff's amended petition are true."

Appellant groups and treats together several alleged trial errors, among others overruling motion to strike out parts of the petition, motion to make petition more definite and certain, demurrer to amended petition, and objection to introduction of evidence. These preliminary matters have been considered in connection with the allegations of the petition, and we see no substantial error in the ruling of the court thereon.

The petition alleged the relation between the parties as attorney and client; that plaintiff was induced by defendant to execute the deed to defendant in order to procure a loan on the land conveyed, so as to pay the judgment against the land and the indebtedness to the defendant, his attorney, and defendant was to return the legal title when plaintiff desired and defendant was paid; also, alleges demand and refusal to reconvey and offer to pay any balance that may remain, and prays for reconveyance as per agreement and an accounting of rents and profits. A pleading can generally be made more definite and certain, and perhaps this one could have been made so, but our attention is not directed to any serious or vital defect therein or prejudicial allegations that might have been stricken out.

It is seriously contended by the appellant that the plaintiff has no legal capacity to sue because he had been convicted of a crime and sentenced to confinement and hard labor in the state penitentiary for a term less than life. At the time this case was commenced the supreme court had affirmed the decision and the district judge had paroled him. R. S. 21-118 provides that "a sentence of confinement and hard labor for a term less than life suspends all civil rights of the person so sentenced during the term thereof." His term of confinement had not commenced. He cannot claim credit for service during the time he is out on parole.

"The suspension of the civil rights of a person sentenced to the penitentiary for a term less than life begins at the date of his imprisonment under the sentence." (*Harmon v. Bowers,* 78 Kan. 135, syl. ¶ 1, 96 Pac. 51.)

"From these provisions it appears that civil rights are not suspended until the convict is imprisoned. If we should hold that civil rights are suspended the moment sentence is pronounced the defendant's punishment would be increased by taking away his civil rights for an indefinite period in excess of the term of imprisonment, which does not begin until the stay allowed upon appeal has expired and he is imprisoned, or, possibly, when he is in custody to be conveyed to the penitentiary." (*Harmon v. Bowers,* supra, p. 137.)

Even the last sentence here quoted will not apply here, for the reason it is not shown that he was ever in custody to be conveyed to the penitentiary.

Appellant urges error in the admission of parol evidence as to the relation of the parties and the circumstances under which the written instruments were executed by the parties hereto, because such evidence tended to contradict, alter and vary the terms of such instruments. In the first place, we think the evidence so introduced, as it appears in the abstract, does not contradict the terms of the deed and contract but, rather, supplies information where the contract is incomplete and explains and interprets the purposes and intentions of the parties at the time the contracts were executed. This has always been proper and such evidence is not inadmissible.

"The parol evidence rule does not exclude proof of the true consideration of written instruments. The situation of the parties and the circumstances under which written instruments are executed and delivered may be shown by parol in aid of interpretation. The deed, the agreement, and the will are to be considered as integral parts of a single transaction, so far as disposition of land is concerned." (*Roseman v. Nienaber,* 100 Kan. 174, 176, 166 Pac. 491.)

"Parol testimony is competent (a) to prove that defendant orally bound himself to pay his tenant's debt out of the tenant's wheat crop turned over to defendant for that purpose; and (b) to explain certain indefinite matter contained in a written contract to which defendant had subscribed." (*Schroyer v. Ruffhead,* 122 Kan. 767, syl. ¶ 4, 253 Pac. 414.)

"A written contract for the performance of certain services and conditions which contained no provision as to the duration of the contract relation or the time within which the services and conditions were to be performed is manifestly incomplete, and parol evidence to supplement and explain the written provisions is admissible." (*Kaul v. Telephone Co.,* 95 Kan. 1, syl. ¶ 1, 147 Pac. 1130.)

"Parol evidence is admissible to prove the terms of the contract not contained in the letter." (*Thurston v. Lubrite Refining Co.,* 120 Kan. 137, syl., 242 Pac. 126. See, also, *Shields v. Johnson,* 124 Kan. 155, 257 Pac. 926; *MacLorinan v. Finley,* 124 Kan. 637, 261 Pac. 587.)

Appellant cites various authorities to the effect that such parol evidence is only admissible in case of fraud, mutual mistake or un-

due influence being alleged in the petition, or in case the writings are ambiguous. We think this is the true rule where such evidence actually contradicts, but not where it only explains or furnishes incomplete parts. We see nothing in these two written instruments to make them ambiguous or uncertain, but we do see the possible use of such evidence under one of the very exceptions named by appellant, which is undue influence, a technical species of fraud, which is even presumed when a fiduciary relation is shown to have existed between the parties at the time of the execution of the written instruments.

"Parol evidence is admissible on the part of one party to a written agreement, when it shows that the relations of the parties were specially confidential, that the plaintiff had great confidence in the defendant, and relied upon his advice, and was likely to be guided by it." (10 R. C. L. 1059.)

"The relation of attorney and client has always been regarded as one of special trust and confidence. The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them. So strict is the rule on this subject that dealings between an attorney and his client are held, as against the attorney, to be *prima facie* fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence, but that he gave his client all the *information and advice which it would have been his duty to give if he himself had not been interested*, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." (6 C. J. 686, 687.)

This rule obtains in this state wherever fiduciary relations exist. See *White v. White,* 103 Kan. 816, 176 Pac. 644; *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1; *Lyons v. Lyons,* 114 Kan. 514, 220 Pac. 294; *Bolin v. Krengel,* 116 Kan. 459, 227 Pac. 266.

So much for the question of the admissibility of parol evidence in cases where a confidential relation exists between the parties as attorney and client. Not that we think such rule or such evidence is necessary or important in the determination of this case, but because the appellant urges and insists that there was reversible error in admitting such evidence. We presume the attorneys for plaintiff in the exercise of discretion plead in a way to avail themselves of all their rights and introduced their proof in the same way, but we think the issues in this case can be determined on the face of the papers without any explanation by parol evidence and without the question of the relation of attorney and client, and, believing they

can, we much prefer to reach a legal conclusion as to the rights of these litigants without reference to that relationship.

The warranty deed names a consideration of $16,000 and conveys the 800 acres to the defendant subject to the judgment of $7,286.50 and a mortgage of $5,000. The contract executed the same day refers to the deed and the land by it conveyed, and recites that for and in consideration of the sum of $5,000 and subject to a certain judgment set forth in the deed, if the second party (defendant) shall sell or dispose of the land for a sum in excess of judgment with interest and costs and the $5,000, "then said party, of the second part agrees to pay the said party of the first part said excess amount." The next paragraph is as follows:

"It is further agreed that if the said party of the first part should at any time pay to the said party of the second part said sum of five thousand and no/100 dollars, hereinabove mentioned, the said party of the second part agrees to deed back to the said party of the first part all of said real estate subject to the judgment hereinabove set forth."

Let us observe a few points in these instruments. First, there is no limit in either paragraph as to time, except the last one provides that the plaintiff may "at any time pay" the party of the second part the $5,000 and shall be entitled to a reconveyance; second, the $5,000 to be paid to defendant is the same $5,000 described in the deed as being a mortgage; and, third, the difference in consideration of the two instruments on the face of them—in the deed $16,000 and in the contract $12,286.50, with interests and costs. Appellant claims these two instruments constitute a conditional sale; appellee maintains that at most they make defendant a trustee to reconvey to plaintiff; and the court found that the transaction was not a sale. Appellant relies largely upon the case of *Hoyt v. National Bank*, 115 Kan. 167, 222 Pac. 127, and cases cited therein. A careful review of all those cases will show they are widely different from the case at bar. In that case it is said in the opinion:

"The true test in determining whether or not the transaction between the parties constituted an absolute conveyance or a mortgage, is whether, after the transaction, there existed, by virtue thereof, the relation of debtor and creditor. It is well settled that an instrument in form of a deed or an absolute conveyance may, under certain circumstances, be shown to have been given only as security for the payment of a debt or the performance of some act, in which case the instrument is in reality a mortgage." (p. 172.)

. The test is also given in the syllabus as follows:

"A mortgage is a defeasible conveyance to secure the payment of a debt. Where there is no continuing debt, the execution of a deed with a simultaneous contract to reconvey upon the payment of certain sums of money by the grantor to the grantee within a specified time the payment of which is optional with the grantor, is a conditional sale and not a mortgage."

Note the requirement of time, which does not apply here. In that one there was a limit to the option; not so here. Again, the test is as to the continuing of the debt. Here, at the close of the negotiations the debt still existed, described in the deed as a mortgage, and three times mentioned in the contract by referring to the sum of $5,000 to be paid to second party. In the Hoyt case special emphasis is given to the fact that his indebtedness was canceled and his notes and obligations returned to him before the deed and contract were executed. In the case of *Fabrique v. Mining Co.*, 69 Kan. 733, 77 Pac. 584, cited by appellant, the mortgage on the land had been foreclosed and the property sold before the contract was made, and no debt existed. They made a new deal like they did in the Hoyt case, and, of course, the debt being canceled, it was nothing but an option, and the option had expired before the action was commenced. It was said in the opinion in the case of *Bank v. Kackley*, 88 Kan. 70, 71, 127 Pac. 539:

"If the deed were not a mortgage the bank bought for cash and agreed to sell a year later for the same price—a queer thing for a bank to do."

There can be no question about the $5,000 being an existing debt at the time this deed and contract were executed, it being so designated in the deed and in the contract, to be paid either out of the proceeds of a sale or by the plaintiff paying the defendant at any time, with the option still open, and covered by an offer in his petition.

"Where at the same time a deed is made the grantee executes a contract to reconvey upon the payment of an existing debt owing by the grantor the transaction is in effect a mortgage, notwithstanding the grantee takes possession and refuses to accept an ordinary mortgage, giving as a reason that he does not wish to be at the expense of a foreclosure in case of a default." (*Wiswell v. Simmons*, 77 Kan. 622, syl. ¶ 2, 95 Pac. 407. See, also, *Calhoun v. Anderson*, 78 Kan. 746, 98 Pac. 274; *Gilmore v. Hoskinson*, 98 Kan. 86, 157 Pac. 426.)

We conclude that the trial court was right in its finding that this was not a sale, and that the plaintiff is entitled to have a reconveyance of the land described in the deed upon paying the whole or any balance of the $5,000 indebtedness that is found to be left after being given credit for the rents and profits of the land since

the date of the deed; that an accounting be had under the pleadings now in this case or as they may be amended by consent of the court, and in such accounting due consideration be given of all legitimate items in the way of expenses, as well as items of income.

Two other assignments of error as to the value of the land and discrepancies in testimony of plaintiff we pass as not affecting the result of the case.

The point discussed in the briefs as to a trust arising by implication of law we think not pertinent under the view we take of the written instruments.

The judgment is affirmed, and the cause is remanded with instructions to proceed with the accounting in accordance with the views herein expressed.