No. 23,246.

W. J. DYER, *Appellee,* v. MELISSA J. JOHNSON, *Appellant.*

SYLLABUS BY THE COURT.

1. RULING ON DEMURRER—*Time in Which to Appeal.* A trial court's ruling on a demurrer to a petition is not subject to review when not appealed from within six months.

2. APPEAL—*Insufficient Specifications of Error.* A specification of error that the trial court admitted improper evidence, without some showing as to what the improper evidence consisted of, presents no question for review.

3. DEED—*Absolute in Form—Parol Evidence to Show Deed to Be an Equitable Mortgage.* The rule followed that parol evidence is ad-

Dyer v. Johnson.

missible to prove that a warranty deed absolute in form was an equitable mortgage to secure the repayment of purchase money.

4. SAME—*Findings Supported by Evidence.* The evidence was sufficient to support the trial court's findings of fact.

5. TRIAL—*Conclusions of Law.* The trial court's conclusions of law were necessitated by the findings of fact.

6. SAME—*Judgment—Motion for New Trial.* The judgment was correct, and the motion for a new trial was properly overruled.

7. DEED—*Absolute Deed in Form—Equitable Mortgage.* The plaintiff solicited the defendant for money to purchase a farm in behalf of a friend, and to take a mortgage on the farm for the full amount of the purchase price, as she had done on a similar occasion for the plaintiff many years before. She declined, giving reasons for not following her former action, but offered to furnish the money and take the title in herself, and to put plaintiff's friend in possession of the farm under a lease with an option to purchase, if plaintiff would look after the matter for her, and upon his promise to protect her investment and take the land himself if his friend failed to do so. This agreement was made; defendant purchased the farm, and plaintiff's friend went into possession. The latter defaulted in his payments; these were made good by plaintiff, and he took over the farm and the lease option by assignment, and continued to pay the interest and taxes. These and other pertinent facts narrated in the opinion, were clearly established by the evidence. *Held,* that the plaintiff was the owner of the farm, and the defendant was the equitable mortgagee.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed June 11, 1921. Affirmed.

*John A. Hall,* of Pleasanton, for the appellant.

*Charles F. Trinkle,* of La Cygne, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the purpose of having a deed decreed to be a mortgage and for the determination of financial matters pertaining thereto.

The defendant, Melissa J. Johnson, held the title to 80 acres of land in Linn county by a deed of general warranty from the prior owner, one Edgar Goss of Arizona. The defendant, who is the aunt of plaintiff's wife, is a woman of some financial means. About 25 years ago she loaned the plaintiff, W. J. Dyer, the entire purchase price of a farm, permitting him to

take the title thereto, and she took a mortgage on the property as her security. At various times thereafter she furnished the plaintiff with financial backing. On the strength of this long and amicable relationship, some time in the fall of 1913, plaintiff began negotiations for the purchase of the 80 acres involved in this lawsuit. He ascertained from the father of Goss, the owner, that the land in dispute could be bought for $2,500. About that time the plaintiff told a neighbor, W. E. Robbins, of his prospective purchase, and that he intended to ask his wife's aunt, Mrs. Johnson, for the money to buy the property. Robbins expressed a desire to buy the land, and Dyer told Robbins that as the latter had no land of his own, he would let him have it; and Dyer made a journey to the residence of the defendant at Fort Scott to see if she would advance the entire sum to purchase the land so that Robbins might get it under the same sort of arrangement which she had sanctioned when Dyer got his first farm through her financial assistance many years before. Dyer explained to Mrs. Johnson that he wanted to assist Robbins to get the land, that the land was worth the price, and that if she would advance the money to pay for it, he would stand good for it and take the land if Robbins did not. Mrs. Johnson declined to do as she had done for Dyer himself, pointing out that Robbins was a stranger to her, and if a foreclosure were necessary that would take considerable time, and there was the possibility of double taxation; but she offered to furnish the $2,500 and take the title in her own name if Dyer would stand good for her investment and interest thereon at 6 per cent, and that Robbins could go on the land as a tenant under a lease with an option to purchase it at cost, and that Robbins should pay 6½ per cent interest, and that she would allow Dyer ½ per cent for his services in looking after the matter for her.

This arrangement proposed by defendant was agreed to and consummated in February, 1914; and in March, Dyer, Robbins and Mrs. Johnson met James Goss, father of the Arizona owner, and Mrs. Johnson paid him the $2,500, and the deed was delivered to her. She also executed a five-year lease on the farm to Robbins, at $200 per annum, which lease included an option that he might purchase the property for $2,500. The option also provided that any excess in the annual pay-

ment of $200 which might arise after the interest at 6½ per cent on $2,500 was deducted therefrom, together with the annual taxes, should be considered as a payment on the purchase price, and that when $500 had been paid on the purchase price, she would give Robbins a deed to the property and take back a mortgage for the balance.

Pursuant to this arrangement, Robbins took possession of the farm and occupied it for nearly three years. He paid the $200 due at the end of the first year but defaulted on the remainder. The plaintiff caused Robbins to give defendant promissory notes for the defaulted payments, and indorsed them as surety. To indemnify himself plaintiff first took an assignment of Robbins' lease-option, but afterwards Robbins vacated the premises, and the plaintiff himself went into possession. The defendant never concerned herself about the property, never saw it until about the time Robbins vacated it in 1916, and she continued to look to Dyer for the payment of the interest on her investment, and to pay the taxes. In March, 1918, he had a settlement with the defendant, paying her the interest on the Robbins' notes and also the interest on the $2,500 for the year between March, 1917 and March, 1918. During these years Dyer also paid the taxes, but in 1919 defendant paid them herself, as plaintiff discovered when he went to discharge that duty at the usual time.

Meantime, since the plaintiff and defendant first concerned themselves with this land, it had doubled in value. In 1919 Dyer had some negotiations under way with one J. A. Willis looking to its sale at $65 per acre including the crop, and Dyer and Willis went to see Mrs. Johnson and inquired of her whether she would carry a loan of $3,000 on the property. In this conversation Mrs. Johnson for the first time learned the surprising figure at which the land was being negotiated for sale; and shortly thereafter she offered to sell the land herself to a third party, which speedily brought about this lawsuit.

Evidence of the matters above narrated and other less significant details were developed at the trial. The court made extended findings of fact, found that Dyer owned the property and that Mrs. Johnson's deed was an equitable mortgage, ascertained and determined Dyer's debt to Mrs. Johnson, and decreed the same to be a first lien on the land, and ordered

judgment in her favor for the amount due her with interest and for the taxes she had paid in 1919, aggregating $3,268.42, and ordered foreclosure unless plaintiff paid the same within ten days.

The defendant, Mrs. Johnson, appeals, specifying errors:

"1. In overruling the demurrer to the petition.

"2. In admitting improper evidence.

"3. In making findings of fact which are not supported by the evidence.

"4. In making conclusions of law not warranted by the facts.

"5. In rendering decree in favor of plaintiff.

"6. In overruling motion for new trial."

Noting these in order, we find no discussion in appellant's brief touching the court's ruling on the demurrer. The demurrer to the petition was overruled on February 2, 1920, and this appeal was not taken until October 2, 1920, more than six months after the ruling on the demurrer, and we assume that this point has been abandoned. Furthermore, we have now no jurisdiction to consider it. (*Slimmer v. Rice,* 99 Kan. 99, 160 Pac. 984.)

Touching the admission of improper evidence, no particular matters are pointed out for our scrutiny and determination. If this has reference to the admission of parol testimony to show that the warranty deed from Goss to Johnson was only an equitable mortgage to secure to her the purchase money for the eighty acres which was to belong to Robbins if and when he repaid her, or to Dyer if Robbins failed and Dyer stood back of him and paid in his stead, then we come to a question of law which is thoroughly settled in this jurisdiction. Such evidence is competent, and the rule is the same whether the matter involved concerns either realty or chattel property. (*McNamara v. Culver,* 22 Kan. 661, syl. ¶ 2; *Butts v. Privett, Sheriff,* 36 Kan. 711, 14 Pac. 247; *Pope v. Nichols,* 61 Kan. 230, 59 Pac. 257; *Martin v. Allen,* 67 Kan. 758, 761, 74 Pac. 249; *Hubbard v. Cheney,* 76 Kan. 222, 226, 91 Pac. 792; *Winsor v. Winsor,* 78 Kan. 885, 95 Pac. 1136; *Saylor v. Crooker,* 89 Kan. 51, syl. ¶ 1, 130 Pac. 689; *Boam v. Cohen,* 94 Kan. 42, 145 Pac. 559; *Root v. Wear,* 98 Kan. 234, 237, 157 Pac. 1181.)

See, also, an extended treatise on this subject in L. R. A., 1916 B, 18-610.

Passing then to the third assignment of error, and this is the text of most of defendant's argument, we cannot discern any want of substantial evidence to support the findings of the trial court. These findings are sixteen in number and are too long for reproduction here, but defendant does not specify any single finding as being unsupported by the evidence. Indeed, we do not find much sharp dispute between the testimony given in plaintiff's behalf and that given for defendant in the most significant and controlling aspects of this controversy. The defendant herself advanced no convincing theory of any different interpretation which might be placed on her business relations with plaintiff than that of equitable mortgagee, especially after Robbins vacated the premises and Dyer took possession, or which would explain why she continued to look to him for the interest on her investment of $2,500, and to settle with him on that basis in 1917, and to accept his check, as she did on March 29, 1918, for the interest on the $2,500 as well as for the interest on the notes for $300 given by Robbins and endorsed by Dyer.

Answering an inquiry by the court, defendant testified:

"Q. At the time Mr. Willis was at your house and talking about the land, did you make the statement that Mr. Dyer would have to take the mortgage? A. In words like this, 'If there was a $3,000.00 mortgage, he would have to take the mortgage.'

"Q. At that time, would you have been willing to take your investment and six per cent interest and sell the land, was that your idea? A. Why, he would have had to have bought the land and paid me out on the land and then he could have dealt with Mr. Willis.

"Q. He was to pay you $2,500.00 and $300.00 [Robbin's notes] and six per cent interest? A. He never said he would.

"Q. Is that what you understood? A. Yes, sir."

The inconsistencies which defendant urges against the testimony for plaintiff are more plausible than real. Of course when plaintiff talked with strangers he spoke of the defendant as the owner of the property; and of course when he desired to lease the land for gas and oil he sent the lease to her for signature. He would hardly be expected to explain to third parties the informal and trusted relationship which existed between them. All these circumstances were in evidence for what they were worth. At the trial defendant's counsel was at liberty to make the most of them in his argument; but they serve little purpose here. It would not avail

even if he succeeded in raising doubt in our minds touching the correctness of the trial court's findings of fact. The making of those findings was the function of the trial court, not ours; nor can we discern that the parol testimony together with all the evidential circumstances lacked any element of clarity or sufficiency to justify the finding that Mrs. Johnson's deed, absolute on its face though it was, was in fact an equitable mortgage, and this we are bound to hold, although we fully recognize the potent rule of evidence laid down in *Winston v. Burnell*, 44 Kan. 367, 24 Pac. 477, and the other cases cited by defendant. The evidence had the requisite sufficiency to satisfy that rule.

The trial court's conclusions of law necessarily followed its findings of fact. Once the fact that defendant's deed was from its inception an equitable mortgage was established, its status as such was crystallized and could be changed only by a new contract, or terminated by foreclosure (*LeComte v. Pennock*, 61 Kan. 330, 59 Pac. 641; *Stratton v. Rotrock*, 84 Kan. 198, 114 Pac. 234); and this was never done until the judgment was entered in this lawsuit.

The judgment of the trial court was correct, and the motion for a new trial advanced nothing which tended to show that another trial would or should bring about a different result, and it was properly overruled.

The judgment is affirmed.