Hoyt v. National Bank.

No. 24,911.

F. C. Hoyt et al., *Appellants*, v. The Union National Bank of Wichita, *Appellee.*

SYLLABUS BY THE COURT.

Conveyance—*Distinction Between à Mortgage and a Conditional Sale of Real Estate.* A mortgage · is a defeasible conveyance to secure the payment of a debt. Where there is no continuing debt, the execution of a deed with a simultaneous contract to reconvey upon the payment of certain sums of money by the grantor to the grantee within a specified time the payment of which is optional with the grantor, is a conditional sale and not a mortgage, following *Fabrique v. Mining Co.,* 69 Kan. 733.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed January 12, 1924. Affirmed.

*Andrew G. Washbon,* and *O. H. Bentley,* both of Wichita, for the appellants.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson,* and *George Gardner,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to · have a transfer of real property decreed a mortgage, and for an accounting. Defendant prevailed and plaintiffs appeal.

The controversy involves the Union National Bank Building in Wichita, formerly the Barnes building, and the lots on which it is situated.

In January, 1917, the plaintiff, C. F. Hoyt, made a contract to purchase the building from Barnes for a consideration of $250,000 to be made in partial payments. In April, 1917, Barnes and wife executed a warranty deed to the property, deposited the same in escrow, with a copy of the contract, and delivered possession. On October 18, 1918, an extension agreement for payment was made, wherein it was provided that the balance of the principal then remaining unpaid of $150,000 was extended to November 1, 1919. The extension agreement was deposited with the other escrow papers.

Hoyt was a controlling stockholder and president of the Union National Bank. He was indebted to the bank in a large sum of money. On April 23, 1918, he entered into a contract to sell his bank stock and sever his connections with the bank. The pro-

spective purchaser, on examining the condition of the bank, required, as a condition of the purchase, that Hoyt guarantee certain notes owing to the bank. He secured this guaranty by giving to the bank, on April 3, 1918, an assignment of his interest in the. Barnes contract. This contract was later, on October 21, 1918, compromised and superseded by another contract, the details of which it is not necessary to elucidate. Subsequent to this transaction other matters were considered between Hoyt and the bank looking to the liquidation of his indebtedness. Negotiations were continued for a considerable period of time, and finally, on January 27, 1919, culminated in a transfer by Hoyt of his interest in the Barnes contract of purchase. In addition to an assignment of the Barnes contract, Hoyt and his wife executed a quitclaim deed, conveying the property to the bank. At the same time, and as a part of the same transaction, an option contract was entered into whereby Hoyt was given until July 27, 1919, the privilege of purchasing the building.

It is the contention of the plaintiffs that the transaction of January 27, which included the assignment of the Barnes contract, the quitclaim deed, and option contract, constituted a mortgage given by Hoyt to secure his indebtedness to the bank. The defendant contends that the three instruments represented exactly what they express on their face; that they constituted a sale and transfer to the bank of all of the interest of the plaintiffs in the property and in the Barnes contract, with an option to plaintiff to repurchase within a specified time.

Various specifications of error are alleged in the trial below, including alleged erroneous rulings of the court in the rejection of testimony. In this regard it appears, however, that no showing was made on the motion for a new trial, as required by the Civil Code (§ 308). There were other specifications of error based upon the admission of improper testimony. The record fails to disclose of what the improper testimony consisted, and this, likewise, presents no question for review. (*Dyer v. Johnson,* 109 Kan. 338.) Practically all other specifications of error are included in the claim that the court's findings of fact are not sustained or warranted by the evidence and that the conclusions of law are not warranted by the court's findings of fact.

Detailed findings were made by the trial court, a reference to only a part of which is essential to this discussion. The court found that—

"Many conferences and negotiations between said plaintiff F. C. Hoyt and the officials and directors of said bank, . . . culminated in an agreement of said bank to purchase said real estate from the said F. C. Hoyt for the sum of Two Hundred Fifty Thousand Dollars. F. C. Hoyt had, prior to said time, paid to Oscar D. Barnes, under his contract, . . . the sum of One Hundred Thousand Dollars. There was owing to the said Barnes, under said contract the sum of One Hundred Fifty Thousand Dollars principal, and interest, taxes and other expenses afterwards ascertained by the parties. Under the terms of said purchase the said bank was to take the property, subject to One Hundred Fifty Thousand Dollars owing to Mr. Barnes, and pay the balance of the consideration by delivering, transferring and surrendering to Mr. Hoyt such of the notes and obligations hereinbefore referred to and such others, all as might be agreed upon between said Hoyt and the Discount Committee of said bank. As a further consideration of said purchase, the said bank agreed to execute and deliver to the said Hoyt, an option to repurchase said property, said option to extend for six months from the 27th day of January, 1919, to the 27th day of July, 1919, at the hour of twelve o'clock M. . . . Pursuant to said purchase, the said F. C. Hoyt and wife executed a quit claim deed in terms conveying all the right, title and interest of said F. C. Hoyt and wife in and to said real estate, and an assignment absolute in its terms, assigning to the said Union National Bank all right, title and interest of the said F. C. Hoyt and wife in and to said contract known as the 'Barnes Contract.' . . . Contemporaneously with the delivery of said assignment and quit claim deed by the said Hoyt and wife to the Union National Bank, the said Union National Bank paid certain obligations of the said F. C. Hoyt and surrendered, transferred and delivered to him certain promissory notes agreed upon by said Hoyt and the Discount Committee of said bank as aforesaid, aggregating in all the sum of One Hundred Eleven Thousand Five Hundred and Sixty-nine and 36/100 Dollars ($111,569.36). For the excess above One Hundred Thousand Dollars, namely, Eleven Thousand Five Hundred Sixty-nine and 36/100 Dollars ($11,569.36), the said Hoyt executed his promissory notes to said bank, whereby the exact consideration paid and assumed by said bank for the purchase of the property was the sum of $250,000, and the option contract hereinafter described. In said sum $111,569.36 there was included certain items of taxes, expenses and interest due the said O. D. Barnes on his contract in excess of the sum of $150,000. . . . After the delivery and surrender of said notes and the payment of the other considerations, and the delivery of said quit claim deed, assignment and option contract, all of the indebtedness, or liability, of said Hoyt to said bank, direct and indirect, was paid and discharged by said transaction, except said notes for Eleven Thousand Five Hundred sixty-nine and 36/100 Dollars ($11,569.36), representing the sum in excess of One Hundred Thousand Dollars ($100,000), . . . Immediately after said sale, said Union National Bank, took possesion of said premises. One ——— Yerton was in actual charge of the building on said premises as manager and was continued in that capacity; on the 1st day of February, 1919, a new account was opened in The Union National Bank, and thereafter and until on or about the 26th or 27th of July, 1919, an account of the rents collected was kept in said bank

in the manner provided for in said option contract, and in all respects ·the terms and provisions of said option contract were observed and performed by the said Union National Bank. Said Yerton so continued as manager of said building until some time in the fall of 1919, when a new manager was employed and put in charge of the building by the said Union National Bank. . . . On or about the 25th day of July, 1919, the said Union National Bank, being desirous of acquiring and extinguishing the option of the said F. C. Hoyt to purchase said building, caused a telegram to be sent to the said F. C. Hoyt, . . . which telegram is in words and figures following, to wit:

"JULY 25, 1919.

"*F. C. Hoyt, Pennsylvnia Hotel, New York City.*

"For your option Union National Bank will give you credit of Twenty Five Thousand Dollars on your indebtedness stop . . . Wire Union National Bank as follows stop Sanders has full authority to designate credits I am to receive for option on Hoyt Bldg. and I hereby ratify anything he may do.

"Immediately thereafter, to-wit on the 26th day of July, 1919, said Union National Bank received from the said F. C. Hoyt a reply to said telegram, in words and figures following, to-wit:

"NEW YORK, N. Y., July 26, 1919.

"*Union Natl. Bank, Wichita, Kansas.*

"Chas. Sanders has full authority to designate credits I am to receive for settlement on building and I hereby ratify anything he may do. F. C. HOYT. .

"Upon the reception of said telegram the said Charles Sanders therein mentioned, being thereunto duly authorized by the said F. C. Hoyt, executed an instrument in words and figures following, to-wit:

"JULY 26, 1919.

"*The Union National Bank, Wichita, Kansas.*

"GENTLEMEN: In reference to the $25,000 of credit which I am to receive on my indebtedness to you and to the Union Cattle Loan & Investment Company, which credit comes to me for my option to purchase on or before July 27, the Hoyt Building, I direct that the following applications be made . . . .

(Signed)   F. C. HOYT,

By CHAS. SANDERS.

"Application of the said Twenty-five Thousand Dollars as provided in said instrument, was duly made by the said Bank. F. C. Hoyt never exercised or attempted to exercise his said option. . . . Immediately after the purchase of said building by the said Union National Bank, on the 27th or 28th day of January, 1919, the said real estate was entered on the books of said bank as real estate, at the price paid for said equity, namely One Hundred Thousand Dollars.

"After the purchase of said option, on the 26th day of July, 1919, the real estate was covered, on the books of the bank, at the additional cost of One Hundred Twenty-five Thousand Dollars. After the final settlement with O. D. Barnes, on November 1, 1919, and the execution of a mortgage to the Massachusetts Mutual Life Insurance Company, as herein set forth, the equity in said real estate was carried on the books of said Bank as real estate of the value of $160,000. The Court further finds that there was no understanding or agreement or arrangement of any kind at the time of the execution of said quit claim deed and assignment and option contract, described in Findings Nos.

20 and 21 or at any other time, that said instruments or the transaction thereby represented should be a mortgage or security or anything other than what said contracts and instruments on their face appeared to be, and there was no debt or liability of said Hoyt, retained nor continued to exist, for which the rights created by said document were in any way, shape or form security. . . . On the 1st day of November, 1919, the date when the balance of the amount owing Oscar D. Barnes, on the 'Barnes Contract' and the various extensions thereof, matured, the said defendant the Union National Bank ascertained from the said Oscar D. Barnes that the amount unpaid on said contract and the extensions thereof was the sum of $164,728.09, and did then and there pay to the said escrow holder, the Wichita State Bank through its president, Howard Wheeler, said sum of $164,728.09, and receive from said escrow holder the warranty deed described in the sixth Finding of Fact herein, and caused said warranty deed, together with the quit claim deed set forth in the 21st Finding of Fact to be filed for record and duly recorded in the office of the Register of Deeds of Sedgwick county, Kansas. The consideration so paid by the said Union National Bank as herein stated, was all paid and accounted for to the said O. D. Barnes. On or about the 15th day of November, 1919, said Union National Bank executed to the Massachusetts Mutual Life Insurance Company, and caused the same to be duly recorded, a mortgage on said real estate to secure a loan of $125,000. The defendant, The Union National Bank has been continuously in the open and exclusive possession of said real estate since the 28th day of January, 1919, and after the expiration of said option contract and the purchase of said option as set forth in the 24th Finding of Fact herein, changed the name of said building from the former name of 'Hoyt Building' which appeared on a large sign on the Douglas Avenue cornice of said building and substituted in its place the words 'Union National Bank,' and made extensive improvements and renovations therein and included said building in the statement of its assets and liabilities. . . . The plaintiffs have never made any claim to this defendant that they believed or understood or claimed that the transaction represented by said quit claim deed, assignment of the 'Barnes Contract' and option agreement, described in the 20th and 21st Finding of Fact and dated January 27, 1919, was a security or mortgage, or that the same represented a transaction other or different from what said instruments express on their face, until the commencement of this action on the 19th day of September, 1922. . . . The plaintiffs, after said 27th day of January, 1919, never made any payments of any character or description, either upon said 'Barnes Contract,' or any other liability which attached to said building, or for any expenses or improvements or repairs pertaining thereto. . . . Except as stated in these Special Findings of Fact, the court finds generally in favor of the defendant, The Union National Bank, and against the plaintiffs, F. C. Hoyt and Minnie V. Hoyt.

"From the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

"*First.* Said transaction evidenced by said quit claim deed, assignment and option contract, dated January 27, 1919, were not given as a security or mortgage.

"*Second.* The Court finds that said instruments represented and constituted a sale by the said Hoyt and wife, to the Union National Bank of all their

right, title and interest in said 'Barnes Contract' and the real estate hereinbefore described, with an option or privilege granted to the said F. C. Hoyt to purchase said property for the price and under the terms expressed in said option contract."

The true test in determining whether or not the transaction between the parties constituted an absolute conveyance or a mortgage, is whether, after the transaction, there existed, by virtue thereof, the relation of debtor and creditor. It is well settled that an instrument in form of a deed or an absolute conveyance may, under certain circumstances, be shown to have been given only as security for the payment of a debt or the performance of some act, in which case the instrument is in reality a mortgage.

In *Fabrique v. Mining Co.*, 69 Kan. 733, 77 Pac. 584, it was said:

"A mortgage is a defeasible conveyance to secure the payment of a debt. Where there is no continuing debt, the execution of a deed with a simultaneous contract to reconvey upon the payment of certain sums of money by the grantor to the grantee within a specified time the payment of which is optional with the grantor, is a conditional sale and not a mortgage." (Syl.)

In the opinion it was said:

"The test in determining whether an absolute conveyance with a separate agreement to reconvey, executed simultaneously, constitute a mortgage is whether the relation of debtor and creditor continues to exist. At page 163 (note *d*) of volume 4 of the fourteenth edition of Kent's Commentaries, the rule is stated as follows: 'The test of the distinction is this: If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, . . . and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a reconveyance, it is a conditional sale.' This is the test adopted by this court in *McDonald & Co. v. Kellogg, Trustee*, 30 Kan. 170, 2 Pac. 507; *Elston v. Chamberlain*, 41 id. 354, 21 Pac. 259; *McNamara v. Culver*, 22 id. 661; *Martin v. Allen*, 67 id. 758, 74 Pac. 249." (p. 737.)

In *Martin v. Allen*, 67 Kan. 758, 74 Pac. 249, there was an option to purchase the property within three years from the date of the warranty deed. The contention was made that the transaction constituted a mortgage and not a sale. The court there said:

"The test in such cases is whether the grantor in the deed sustains the relation of a debtor to the grantee. (*McNamara v. Culver*, 22 Kan. 661.) In the present case could the grantee, David Allen, at the expiration of the three years which was given the grantor to pay, have successfully prosecuted an action against the latter to recover the $1,206 and interest? We think not. The contract between the parties negatives the existence of a debt. After the execution of the deed and contract they did not sustain the relation of debtor and creditor toward each other. The agreement expressly states that the deed to Allen was executed and delivered to him to 'meet said claim and

Hoyt v. National Bank.

to pay it off.' The deed was given in satisfaction of the debt, computed to amount to $1,206. The facts are very like those in the case of *McNamara v. Culver*, supra." (p. 761.)

In *Reader v. Gorsuch*, 55 Kan. 553, 40 Pac. 897, it was said:

"In order to establish that a deed absolute on its face is in fact only a mortgage, it must be shown, either by direct evidence or by the circumstances of the case, that it was the intention and understanding of the grantor and the grantee that it should so operate. It is not enough that one of the parties so considered it; both must concur; otherwise, the deed will be treated according to its import, unless tainted by fraud or the result of accident or mutual mistake." (See, also, *Wiswell v. Simmons*, 77 Kan. 622, 95 Pac. 407; *Plummer v. Iles*, 41 Wash. 5; *Weltner v. Thurmond*, 17 Wyo. 268.)

The findings of the trial court show explicitly that the relation of debtor and creditor was not created by the transaction. The evidence of the plaintiff Hoyt supports the finding. Among other things, he testified:

"It was finally decided on after a good deal of argument that I should give the quit-claim deed and the assignment and the contract, and they in return would surrender notes and obligations amounting to $100,000, and give me the (option) contract . . . All the negotiations were had prior to the execution of this contract, . . . All our contracts and talks and negotiations were reduced to the form of these three instruments. I did not pay the $100,000 mentioned in the option. Of the $100,000 of notes taken out of the bank, there were quite a bunch of them in which Mr. McQuown, Mr. Baker and Mr. Baysinger were interested, which were called the 'Bunch Notes.' These were delivered to Mr. McQuown as trustee for us who owned the notes . . . My share of the 'Bunch Notes' so-called, was $32,692.63. The total amount of my share of the 'Bunch Notes' and my own notes and the various other transactions figured $113,246.74, . . . which was cut down by a rebate of $1677.30, to $111,469.36. This left $11,569.36 in excess of $100,000. For this excess I gave my notes to the bank. Part of these notes I put up as collateral to this note of eleven thousand and something dollars."

It is clear that this transaction, instead of creating an indebtedness, to secure which Hoyt transferred the building, his indebtedness to the bank was absolutely extinguished to the extent of $100,000. The surrendering to him of notes to that amount was a cancellation of such indebtedness. Mr. Hoyt stated that what he meant by indebtedness was the $100,000 mentioned in the option contract. The test as to whether or not the relation of debtor and creditor existed under the option contract, was whether or not the defendant could have maintained an action against Mr. Hoyt for the $100,000 named in the contract as the purchase price, over and above the encumbrance on the property. It was entirely optional with the

plaintiff whether he repurchased the property or not.   No obligation rested on him to do so.

In *Reed v. Parker,* 33 Wash. 107, it was said:

"To have created the relation of mortgagor and mortgagee between the parties, it was essential that there should have been a debt capable of enforcement by action, and which was intended to be secured by the mortgage. There could be no debt when there was no liability therefor.   A mere privilege to pay did not impose an obligation so to do.   Upon this subject Chief Justice Marshall observes:   'It is therefore a necessary ingredient in a mortgage that the mortgagee should have a remedy against the person of the debtor.   If this remedy really exists, its not being reserved in terms will not affect the case.   But it must exist in order to justify a construction which overrules the express words of the instrument.   Its existence, in this case, is certainly not to be collected from the deed.   There is no acknowledgment of a pre-existing debt, nor any covenant for repayment.   An action at law for the recovery of the money certainly could not have been sustained; and if to a bill in chancery praying a sale of the premises, and a decree for so much money as might remain due, Robert Alexander had answered that this was a sale, and not a mortgage, clear proof to the contrary must have been produced to justify a decree against him.'   *Conway's Exrs. v. Alexander,* 7 Cranch, 218, 237, [3 L. ed. 321].   An instrument in writing cannot be converted into a mortgage when there is absence of mutuality of right both to foreclose and redeem.   *Chaires v. Brady,* 10 Fla. 133.   See, also, *Rue v. Dole,* 107 Ill. 275; *Saxton v. Hitchcock,* 47 Barb. 220; 1 Jones on Mortgages (5th ed.), § 269; 20 Am. & Eng. Enc. of Law (2nd ed.), 942."   (p. 116.)

In *Blumberg v. Beekman,* 121 Mich. 647, it was said:

"An instrument in the form of a warranty deed, which reserves to the grantor the privilege of 'redeeming' the premises by repayment of the purchase price, with interest, at any time within 10 years, and forbids the grantee to cut timber during the period of redemption, such repayment not being obligatory upon, but merely optional with, the grantor, constitutes a conditional sale, and not a mortgage."   (Syl.)

In *Reed v. Bond,* 96 Mich. 134, it was said:

"A deed given by a debtor to a creditor in satisfaction of the debt, in which provision is made for the repurchase of the land, at the option of the grantor, within a specified time, and its conveyance to him by the grantee on payment of the purchase price and interest, will be treated as an absolute conveyance, with an option to repurchase."   (Syl.)   See, also, *City Lumber Co. v. Hollands,* 181 Mich. 531; *Cogarn v. Connors,* 188 Mich. 161; *O'Reilly v. Tillman,* 111 Wash. 594; *Frankovich v. Weigant,* 104 Kan. 84, 181 Pac. 945; *Dyer v. Johnson,* 109 Kan. 338, 198 Pac. 944; *Root v. Wear,* 98 Kan. 234, 157 Pac. 1181. An extensive treatise on deeds as mortgages is to be found in L. R. A. 1916, B-18.)

We are convinced that, whatever right Hoyt had in the building by virtue of his contract with Barnes, it passes to the bank through

the transaction of January 27. The bank obtained all the interest he had and paid him $100,000 for it. Later, on July 24, the bank purchased whatever rights Hoyt had under his option. It paid $25,000 for his option.

The findings of the trial court explicitly, and with much detail, covered all the various transactions between the parties. While there may have been disputes on some points, there was substantial evidence to support all the findings, and under the familiar rule they will not be disturbed by this court.

Deeds and written contracts are deemed to express the real intention of the parties, until the contrary is established by convincing proof; and a party alleging that a deed, absolute and unconditional in form, was, in effect, a mortgage, must meet and overcome the presumption which the law raises from the face of the papers, viz., that the instrument is in legal effect just what it purports to be. And this presumption is strengthened by lapse of time, so that if a very long period elapses before the grantor sets up his claim that the instrument should be considered as a mortgage, the clearness and weight of the evidence which is required of him will be correspondingly increased. (27 Cyc. 1017.)

To justify a court in adjudging that a deed, which is absolute on its face, was intended to operate and shall operate as a mortgage only, the proof to that effect must be clear, consistent, unequivocal, satisfactory and convincing. (27 Cyc. 1025. See, also, *Winston v. Burnell*, 44 Kan. 367, 24 Pac. 476.)

The trial court's conclusions of law, as a result of the findings of fact, were proper and are approved.

The judgment is affirmed.