## ST. LOUIS, LAWRENCE & WESTERN RAILWAY CO. v. J. E. MADDOX.

1. EVIDENCE; HEARSAY; *Letter-Press Copies of Reports.* Where M. had a contract with the St. Louis, Lawrence & Western railway company, to act as its agent at Wichita to influence the shipment of cattle over its railroad from Carbondale to Chicago and St. Louis, and was to receive as compensation for his services a certain stated sum for every car-load of cattle shipped by the way of Carbondale in cars over said road, and in an action against such railway company to recover his compensation under the contract, he proved the number of cars shipped from Wichita by the Atchison, Topeka & Santa Fé railroad, billed to Chicago and St. Louis, *via* Carbondale and the said St. Louis, L. & W. railway, by a book of record of the A. T. & Santa Fé railroad company containing the

letter-press copies of quarterly reports of the shipment of live stock from Wichita, made by an agent of the A. T. & Santa Fé railroad company to the general freight agent of said last-named company, from dray tickets, which were all on file, and said book not being a book of original entries, nor an account book, *held*, that such evidence was clearly incompetent, as coming within the definition of hearsay evidence.

2. CONTRACTS; AGREEMENTS; *Partly Written, and Partly in Parol.* A contract which is not required by statute to be in writing, may be partly expressed in writing and partly in an unwritten understanding between the parties; and if so, such understanding may be proved by parol.

### *Error from Sedgwick District Court.*

MADDOX sued the *Railway Company,* and recovered judgment at the September Term 1875, of the district court. The *Railway Company* brings the case here. All necessary facts are stated in the opinion.

*J. P. Usher,* for plaintiff in error.

*H. C. Sluss,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The petition filed in the court below in this case alleged that the railway company was duly incorporated, and was in 1874 engaged in operating a railroad from Carbondale, in Osage county, to Lawrence, in Douglas county; that said railway company in its capacity as common carrier was engaged in transporting live stock from Wichita, in Sedgwick county, Kansas, to St. Louis, Mo.; that J. M. Webster was the general agent and manager of the railway company; that on the 6th of June 1874, the railway company by Webster its agent agreed with J. E. Maddox, and employed him to act as the agent of the company in procuring live stock to be shipped from Wichita, by and with said railway company, and over the line of railroad by the way of the town of Carbondale to St. Louis; that the railway company agreed to pay said Maddox $3 for each and every car-load of live stock which should be shipped over the defendant's line of railway to the National stock-yards, at the city of St. Louis, during the shipping season of 1874, and pay a drawback to said

Maddox of all the money over the sum of $80 per car which defendant should charge and collect of shippers of live stock over the St. Louis, L. & W. railway to the said National stock-yards, and to pay said Maddox $2 per car-load of live stock which should be shipped over said railway to Chicago, Ill., during the said shipping season, and pay Maddox a drawback of all money over $93 per car which said railway company should charge and receive from shippers of said live stock over its railway to Chicago; that to evidence the amount of compensation so to be paid to Maddox, and the rates at which the railway company was to contract the shipment of cattle and other live stock, a memorandum thereof was reduced to writing, a copy of which is as follows:

"WICHITA, KAS., 26th, 6, 1874.

"Agreement by and between J. M. Webster, of Lawrence, Kas., and J. E. Maddox, viz.: for every car-load of cattle or live stock shipped by the way of Carbondale, Kas., to Chicago, Ill., $2.00 per car to be paid to said J. E. Maddox, and if said live stock is sold at St. Louis, then $3.00 per car-load will be paid. To be paid on shipment of each 100 car-loads. Rate to Chicago, $95. Rate to St. Louis, $75. Rate to National yards, $80.                          JNO. E. MADDOX.
                                           J. M. W."

The petition further averred, that said Maddox spent his time in procuring live stock to be shipped in the season of 1874 from the city of Wichita over the said St. Louis, L. & W. railway to St. Louis and Chicago; that there were shipped from Wichita over said railway to the said National stockyards in the said city of St. Louis, during the shipping season between July 1st 1874, and November 10th 1874, 306 cars of live stock; and to Chicago there were shipped two cars; that the said railway company received $85 per car for stock to the National stock-yards, and $110 per car for stock shipped to Chicago; that the said railway company had not paid Maddox except $123, and demanded judgment for $2,349.00.

The railway company filed an answer containing a general denial, and setting up accord and satisfaction by the payment

of the $123. Maddox replied with a general denial, and that he did not sign the receipt pleaded. Upon the issues, the jury returned a verdict for Maddox for $758, and judgment was duly entered therefor. The errors relied on for the reversal of the judgment are — that there was no evidence to justify the verdict; that the court erred in the admission of testimony offered by the plaintiff, and that the court erred in the rejection of testimony offered by defendant.

The main question for our consideration is, whether the court below committed substantial error in the admission of evidence against the objections of the plaintiff in error. If such error was committed, the judgment must be reversed. A verdict based upon improper testimony, prejudicial to the rights of a party to an action properly excepting thereto, cannot be justified. At the trial of the case, the defendant in error, to prove the number of car-loads of cattle or live stock shipped from Wichita to Chicago and St. Louis *via* Carbondale and the St. Louis, Lawrence & Western railway during the shipping season of 1874, produced and read in evidence, against valid exceptions, a book or record of the Atchison, Topeka & Santa Fé railroad company, kept at Wichita, and puporting to relate to the shipment of stock over that road from Wichita in 1874, and billed to St. Louis and Chicago *via* Carbondale and the St. Louis, L. & W. railway. It appears from the evidence that such book was the letter-press copies of quarterly reports of the shipment of live stock from Wichita station, made by an agent of the A. T. & Santa Fé railroad company to the general freight-agent of the said company. The statements on the originals were made from dray tickets, which were all on file. From examination, it seems the book, or rather the letter-press copies therein inserted, contained the date of shipment, number of the manifest, number of cars, names of consignor and consignee, number of station manifested to, destination, kind, whether cattle or hogs, number of head, rate per car, and amount. It must necessarily have been made at intervals of three months, of the previous three months' transactions of

the A. T. & Santa Fé railroad company, made up in such manner and form, that by reference to the manifests, each of which were numbered, approaching one hundred in all, the whole transaction would appear. It was not a book of original entries, nor an account book, and clearly comes within the definition of hearsay evidence. It was incompetent to be received, and should have been rejected by the court on the objections of the plaintiff in error. Such records would have been competent evidence in an action against the A. T. & Santa Fé railroad company to charge it with the shipment of cattle therein entered; but as to such book, the plaintiff in error was a stranger, and could not be bound in any way thereby. The original records in the hands of the general freight-agent of the A. T. & Santa Fé railroad company could not have been used, if they had been produced, in place of the press copies. It is urged that because the defendant in error was the agent of the St. Louis, L. & W. railway at Wichita, and the A. T. & Santa Fé railroad was a connecting line with the St. Louis, L. & W. railway, that the A. T. & Santa Fé railroad company was the agent of the St. Louis, L. & W. railway company, and therefore an admission which would be good against the A. T. & Santa Fé railroad company would be equally binding in the same matter upon the St. Louis, L. & W. railway company. But neither by the pleadings, written memorandum, or the evidence of the contract, does it in any way appear that the A. T. & Santa Fé railroad company occupied any such relation with the St. Louis, L. & W. railway company. On the other hand, it does distinctly appear that the purpose of the agreement, oral and written, between the parties to this action, was, that the defendant in error should use his influence to ship cattle over the St. Louis, L. & W. railway to Chicago and St. Louis, for certain compensation agreed upon; and if the cattle had been driven from Wichita to Carbondale, instead of being conveyed in cars, and then shipped in accordance with the contract, the defendant in error would have been entitled to compensation. The evidence thus improperly admitted was

very prejudicial to the plaintiff in error.   It was the only definite testimony offered by him to support the allegation in the petition as to the number of cars shipped during the season of 1874 under his contract.   In the absence of this proof, he must have failed in the trial.   The judgment of the district court was therefore erroneous.

In view of a new trial, and the many objections to the petition in this case, made by the plaintiff in error, and of the questions raised as to the written memorandum, it is proper that we should state, that a contract which is not required by statute to be in writing may be partly expressed in writing, and partly in an unwritten understanding between the parties; and if so, such understanding may be proved by parol. As it cannot be contended that the memorandum copied in the petition contained all the terms of the contract, and as it appears from the evidence that it was merely incidental and subordinate to the principal contract, and as its expressions are so obscure and indefinite, that without oral testimony, its meaning cannot be understood, the court below properly allowed extrinsic evidence to explain its terms, and to supply all omissions. *Shepard v. Haas,* 14 Kas. 443; *Hope v. Balen,* 58 N. Y. 380.

The judgment of the district court will be reversed, and the case remanded for further proceedings in accordance with this opinion.

All the Justices concurring.