Schroyer v. Ruffhead.

---

No. 27,140.

K. E. SCHROYER, doing business as THE NESS CITY LUMBER COMPANY, *Appellee,* v. E. J. RUFFHEAD, *Appellant.*

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Time for Appeal—Motion to Strike Amended Petition.* An order overruling a motion to strike an amended petition from the files, when such motion is directed toward the gist of the action and involves its general merits, is not subject to review by the supreme court where no appeal was taken from such order and ruling within six months.

2. PLEADING—*Definiteness and Certainty—Aider by Verdict.* Error assigned on the trial court's ruling on a motion to make plaintiff's petition more definite and certain considered and not sustained.

3. APPEAL AND ERROR—*Time for Appeal—Order Overruling Demurrer to Petition.* Rule followed that error cannot be assigned on a trial court's order overruling a demurrer to a petition where no appeal is taken thereon within six months.

4. EVIDENCE—*Parol Evidence Contradicting Writing—Indefinite Written Contract.* Parol testimony is competent (*a*) to prove that defendant orally bound himself to pay his tenant's debt out of the tenant's wheat crop turned over to defendant for that purpose; and (*b*) to explain certain indefinite matter contained in a written contract to which defendant had subscribed.

5. CONTRACTS—*Evidence—Sufficiency to Establish.* Error assigned on the trial court's ruling on defendant's demurrer to plaintiff's evidence considered and not sustained.

6. FRAUDS, STATUTE OF—*Promise to Answer for Debt of Another—Original Obligation.* Plaintiff, a judgment creditor of defendant's farm tenant, agreed to accept $1,000 out of the proceeds of defendant's wheat crop in full satisfaction of that judgment. Defendant orally agreed to market the tenant's crop, retain enough of the proceeds to satisfy a claim of his own against his tenant, and apply the remainder to the payment of the $1,000 in satisfaction of plaintiff's judgment against defendant's tenant. Defendant's oral agreement was binding as an original obligation of his own making, and for which

Appeal and Error, 3 C. J. pp. 976 n. 27, 1232 n. 98. Contracts, 13 C. J. p. 776 n. 96. Evidence, 22 C. J. pp. 1112 n. 45, 1175 n. 44; 17 L. R .A. 272; 10 R. C. L. 1033. Frauds, Statute of, 27 C. J. pp. 134 n. 15, 156 n. 81; 25 R. C. L. 502. Pleading, 31 Cyc. pp. 649 n. 29, 769 n. 50.

he received a lawful and sufficient consideration, and could not be resisted
on the plea that defendant was being unlawfully held on an oral promise to
answer for the debt of another.

Appeal from Ness district court; ROSCOE H. WILSON, judge. Opinion filed
February 12, 1927. Affirmed.

*A. L. Ferris,* of Ness City, for the appellant.

*Lorin T. Peters* and *Andrew F. Schoeppel,* both of Ness City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff sued defendant for breach of an alleged
contract to pay a third party's debt out of the proceeds of a wheat
crop turned over to defendant for that and other purposes.

The salient facts were these: During the years 1921 to 1924,
inclusive, one G. A. Gordon was the tenant of a large farm owned
by defendant Ruffhead. Early in 1921 Gordon was indebted to the
International Harvester Company as evidenced by two notes for
$1,295.65 and $113.72, due August 1, 1921, bearing 10 per cent in-
terest, secured by a chattel mortgage on fifty acres of wheat grow-
ing on Ruffhead's farm, and also covering a header, tractor and a
four-bottom plow.

The payee indorsed and transferred the notes to the plaintiff,
Schroyer, a lumber dealer in Ness City. They were not paid, and
were reduced to judgment in favor of plaintiff on July 27, 1922.

On or prior to January 17, 1924, this judgment had passed into
the ownership of the International Harvester Company, and on that
date it agreed with Gordon to settle that judgment indebtedness for
$1,000 in cash to be paid out of Gordon's 1924 wheat crop. This
agreement also provided that Gordon's wheat crop should be turned
over to Ruffhead, who was himself a creditor of Gordon as well as
Gordon's landlord. This bargain was explained to Ruffhead by
Gordon in the presence of plaintiff and a representative of the har-
vester company; and Ruffhead assented to the bargain and agreed
to market the wheat, retain his own share as landlord, satisfy his
own claim as creditor, and pay plaintiff $1,000 in full satisfaction of
the judgment indebtedness against Gordon.

The record does not show how the judgment was assigned by
plaintiff to the harvester company, nor how it was retransferred to
plaintiff, but the fact of such transfers is not questioned.

Gordon raised a large crop of wheat during that season of 1924.

but neither he nor Ruffhead kept faith with plaintiff. In July, when the wheat was in stack and shock, Gordon attempted to transfer it to his son, Hugh Gordon, but Ruffhead and the son made an agreement in writing that the tenant's interest in the wheat should be transferred to Ruffhead, less 600 bushels for seed, and Ruffhead was to pay the son $3,800 out of the proceeds of the wheat, and the balance of the proceeds to be—

."Applied on the indebtedness that one G. A. Gordon owes the party of the first part and on indebtedness that the party of the first part [Ruffhead] has indorsed or guaranteed for said G. A. Gordon.

[Dated July 28, 1924.]                    "(Signed)   E. J. Ruffhead.
                                                     Hugh Gordon."

Accordingly defendant received and marketed most of Gordon's wheat crop, but refused to pay the $1,000 to plaintiff according to his repeated agreements. Hence this lawsuit. Defendant's answer included a general denial and invoked the statute of frauds.

On these issues (and others no longer pertinent) the cause was tried. The evidence tended to show that defendant had realized enough money out of Gordon's share of the wheat to satisfy defendant's own claim as creditor and some $365.60 or more in addition thereto. Two special questions were submitted to the jury. These with the jury's answers read:

"1. Did the plaintiff and defendant and G. A. Gordon agree that the defendant should handle the 1924 wheat crop of G. A. Gordon, and, after paying his rent and chattel mortgage, pay the plaintiff one thousand dollars in satisfaction of the judgment against G. A. Gordon?   A. Yes.

"2. Did Hugh Gordon direct the defendant to pay the surplus from the sale of the wheat to the plaintiff?   A. Yes.

Defendant's motion for judgment *non obstante* was overruled, and judgment was entered for plaintiff in the sum of $365.60 with interest and costs.

Defendant appeals, urging various errors which will be noted:

1. It is first urged that plaintiff's second amended petition should have been stricken from the files. Defendant's motion to that effect was overruled on January 31, 1925. Notice of this appeal was given and the appeal filed April 27, 1926, more than six months after the ruling complained of, and as that ruling involved the merits of the action—the very gist of it—it cannot now be reviewed. (R. S. 60-3302, 60-3309; *Whitlaw v. Insurance Co.,* 86 Kan. 826, syl. ¶ 2, 122 Pac. 1039; *Van Deren v. Heineke & Co.,* ante, p. 215, syl. ¶ 2.

2. The next complaint is directed to the trial court's ruling on

defendant's motion to make plaintiff's petition more definite and certain. It is argued that it is impossible to determine "whether defendant was to pay the $1,000 out of his own money or out of wheat to be thereafter furnished by Gordon." This contention lacks merit. Moreover the pretended obscurity in the petition vanished when the final judgment was entered and which did not require defendant to pay any money on Gordon's account out of his own pocket. (*Brooks v. Weik,* 114 Kan. 402, 408, 219 Pac. 528.)

3. Another error assigned on the overruling of defendant's demurrer to plaintiff's second amended petition is brought here too late for review. (R. S. 60-3309; *Smith v. Griffith,* 105 Kan. 357, 358, 184 Pac. 725; *Cramer v. Overfield,* 115 Kan. 197, 198, 222 Pac. 85.)

4. Defendant next complains of the admission of oral testimony given in support of plaintiff's cause of action, the objection being that the allegations of the petition implied an oral promise of defendant "to answer for the debt, default or miscarriage of G. A. Gordon." That is not a fair interpretation of the petition nor of the contract to which Ruffhead twice bound himself, once in January, 1924, as narrated above, and again in July when he bound himself in writing to apply the proceeds of the sale of G. A. Gordon's share of the wheat crop "on indebtedness that the party of the first part [defendant] had indorsed and guaranteed for said G. A. Gordon." The indebtedness thereby became defendant's own primary liability and was no longer merely the debt of another. (*Gestenslager v. Rixon,* 107 Kan. 623, 193 Pac. 184; *Smith v. Investment Co.,* 112 Kan. 201, 210 Pac. 477.) And certainly oral testimony was competent to show what that guaranteed indebtedness was, since the written contract itself did not disclose it. (*Shepard v. Haas,* 14 Kan. 443; *St. L. L. & W. Rly. Co. v. Maddox,* 18 Kan. 546; *Wichita University v. Schweiter,* 50 Kan. 672, syl. ¶ 1, 32 Pac. 352; *Nichols v. Maxson,* 76 Kan. 607, 92 Pac. 545; *Kaul v. Telephone Co.,* 95 Kan. 1, 3, 147 Pac. 1130; *Thurston v. Lubrite Refining Co.,* 120 Kan. 137, 242 Pac. 126.)

Moreover, appellee's brief suggests a shorter answer to this particular assignment of error. One ironclad rule of appellate procedure is that error cannot be based upon the admission or exclusion of evidence unless the party aggrieved thereby has first directed the trial court's attention thereto in a motion for a new trial. Here there

was no motion filed. (*Bennett Grain Co. v. Davis, Director-general*, 114 Kan. 800, 803, 220 Pac. 1031; *Brick v. Fire Insurance Co.*, 117 Kan. 44, 45, 46, 230 Pac. 309.)

5. It is finally urged that the demurrer to plaintiff's evidence should have been sustained. This contention has no more merit than the other assigned errors we have already considered. The contract was well established. Defendant got Gordon's share of the wheat, sold it, and after applying a large part of the proceeds rightfully or otherwise to the payment of various other claims, still retains $365.60, which sum with interest he is required to pay to plaintiff by this judgment. Defendant says plaintiff did not prove that the judgment against Gordon had been released. Very true. Why should he release it? When defendant hands over the amount he is required to pay by this judgment, plaintiff will still lack several hundred dollars of the sum he agreed to accept in full satisfaction of his judgment against Gordon.

Neither error of law nor miscarriage of justice of which plaintiff can complain is disclosed by the record, and the judgment is affirmed.